IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| John Doe,<br><br>    Plaintiff,<br><br>v.<br><br>InformData, LLC f/k/a Wholesale Screening Solutions, LLC,<br><br>    Defendant. | Civ. Action No. 1:25-cv-00826<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

John Doe ("Plaintiff" or "Mr. Doe") by and through his counsel brings the following Complaint against InformData, LLC f/k/a Wholesale Screening Solutions, LLC ("Defendant" or "InformData") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment purposed consumer report published by Defendant to non-party Turn Technologies Inc. ("Turn Technologies") who then resold the same to Plaintiff's potential employer, inclusive of criminal records that had been ***pardoned and expunged*** years earlier. Defendant's reporting of the expunged records was doubly inaccurate and materially misleading because under Delaware law, an expunged criminal record is non-existent unless an exception is specifically provided by law, not present in this case. Alternatively, Defendant was negligent in publishing expunged criminal record information to non-party Turn Technologies Inc., which then resold the same to Plaintiff's potential employer despite the fact that the criminal records had been expunged and should not have been reported on the employment purposed consumer report.

1

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to entities who ultimately resell those consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

3. Defendant reported a consumer report containing inaccurate information about Plaintiff to non-party Turn Technologies which in turn reported that inaccurate information to Plaintiff's employer. Specifically, Defendant reported *expunged* criminal record information. Defendant's reporting is grossly inaccurate and misleading because under Delaware law, an expunged record is non-existent.

4. The criminal records Defendant reported were ***pardoned*** and ***expunged*** criminal records that should not have been included in the employment purposed consumer report.

5. Specifically, Defendant sold a consumer report containing inaccurate information, specifically *expunged* criminal records, about Plaintiff to non-party Turn Technologies, which disclosure is a violation of Delaware law and punishable as a Class B misdemeanor

6. Defendant could have easily avoided selling the inaccurate consumer report had Defendant performed a cursory review of the widely available public court records from New Castle County, Delaware prior to publishing Plaintiff's report to non-party Turn Technologies which published the same to Plaintiff's employer.

7. Had Defendant performed even a cursory review of the public court records, Defendant would have discovered that there are no criminal records pertaining to Plaintiff that are publicly reported and otherwise eligible for including in a consumer report.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures is not only a criminal offense, it resulted in Plaintiff's report being grossly inaccurate.

9. Specifically, Defendant does not employ reasonable procedures to prevent the inclusion of *expunged* criminal records in consumer reports.

10. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

11. Defendant's inaccurate report robbed Plaintiff of the benefit of expungement and cost Plaintiff a good paying job and job security.

12. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

13. In the alternative, Defendant was negligent in that it owed a duty of care, which it breached, and ultimately caused Plaintiff's injuries resulting in damages.

14. Further, Defendant defamed Plaintiff by publishing to third parties criminal records that were expunged and should have been excluded, thereby amounting a false statement that the

criminal records *were not* expunged. Defendant was negligent in publishing false statements about Plaintiff.

15. Under Delaware law, the Plaintiff has a right to deny that such criminal records ever existed.

16. Publishing false criminal record information about a consumer, particularly to a third party is an employer who is considering hiring that consumer for a job, is defamatory.

17. In this case, Plaintiff's injury – denial of employment – is a foreseeable and direct result of Defendant's defamatory statements to Plaintiff's employer.

18. Alternatively, as a result of Defendant's negligence and defamation, Plaintiff has suffered a range of injuries resulting in additional actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

19. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

20. John Doe ("Plaintiff" or "Mr. Doe") is a natural person residing in New Castle, Delaware, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

21. Defendant InformData Solutions, Inc. ("Defendant" or "InformData") is a corporation doing business throughout the United States and has a principal place of business located at 125 Hirst Road Suite 1B Purcellville, VA 20132. InformData can be served through its registered agent C T Corporation Systems located at 4701 Cox Rd Ste 285 Glen Allen, VA, 23060.

22. Among other things, Defendant sells consumer reports, also known as background checks, to other consumer reporting agencies ("CRAs") to be resold to employers for their use of deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by reseller CRAs or CRAs acting as resellers in that context.

23. Defendant is a "consumer reporting agency" as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

24. This Court has federal question jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

25. Plaintiff also brings the Complaint under federal diversity jurisdiction 28 U.S.C. §1332, as the parties are completely diverse in citizenship (Plaintiff is a citizen of Delaware and Defendant is a citizen of Virginia) and the amount in controversy exceeds $75,000.

26. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because the Defendant resides in this District and Division.

## STATUTORY BACKGROUND

27. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

28. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

29. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

30. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

31. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

32. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

33. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

34. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

35. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

36. Defendant disregarded its duties under the FCRA with respect to the consumer report it published about Plaintiff.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

37. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

38. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

39. The background check industry takes in revenues in excess of three billion dollars, annually.

40. Background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the court records are rarely directly reviewed in creating background checks.

41. Background check companies, like Defendant, collect millions of criminal and civil records from a number of sources with data from county, state, and federal level sources. The data

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

42. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

43. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

44. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

45. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

46. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting *expunged* criminal records.

47. As a provider of background check reports, Defendant should be aware of the FCRA requirements and should be a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff's Criminal Records are Pardoned and Subsequently Expunged

48. In February of 2020, Plaintiff appeared before the Board of Pardons seeking a pardon for convictions that were more than a decade old.

49. Thereafter, the Board of Pardons recommended that a pardon be granted to Plaintiff based upon the progress Plaintiff had made over the course of the past decade.

50. Accordingly, on May 26, 2020, Governor Carney granted Plaintiff a Pardon of all the convictions.

51. Thereafter, in July 2020, Plaintiff applied for expungement of the convictions.

52. On March 3, 2021, Plaintiff's petition for expungement of the convictions was granted pursuant to 11 *Del. C.* § 4372 (e) (1), which states:

> If a court issues an order expunging records, all the criminal records relating to a case specified in the order must, within 60 days of the order, be removed from the court's files and placed in the control of the Supervisor of the State Bureau of Identification or otherwise segregated and kept in a manner that ensures that they are not open to public inspection or disclosure. The court may retain a nonpublic record of expungement orders. The court shall send a copy of its order of expungement to the Bureau, and shall consult with the Bureau to develop a standard form of order for expungements. Except as otherwise provided under § 4376 of this title, the Supervisor of the Bureau shall retain control over all expunged records and shall ensure that the records or information contained in the records are not released for any reason.

53. The expungement order further stated that Plaintiff need not disclose that he was arrested, charged, or convicted of the expunged convictions, for any reason except as provided under 11 *Del. C.* §4376(a), which states:

> (1) Except for disclosure to law-enforcement officers acting in the lawful performance of their duties in investigating criminal activity or for the purpose of an employment application as an employee of a law-enforcement agency, it is unlawful for any person having or acquiring access to an expunged court or law-enforcement agency record to open or review it or to disclose to another person any information from it without an order from the court which ordered the record expunged.
>
> (2) In addition to such other lawful purposes as may be prescribed by law or otherwise, criminal justice agencies shall have access to the following:
>     a. Records of expunged probations before judgment and past participation in the First Offenders Controlled Substance Diversion Program, First Offenders Domestic Violence Diversion Program, or a court-supervised drug diversion program for the purpose of determining whether a person is eligible for a probation before judgment, under § 4218 of this title; participation in the First Offenders Controlled

>Substance Diversion Program, under § 4767 of Title 16; participation in the First Offenders Domestic Violence Diversion Program, under § 1024 of Title 10; or participation in a court-supervised drug diversion program.
>
>b. For criminal justice agencies involved in the licensing of individuals to carry a concealed deadly weapon under § 1441 of this title, records of expunged cases for the purpose of determining whether an individual meets the requirements to be granted a license to carry a concealed deadly weapon.

### Plaintiff Applies for Employment with GoShare Inc.

54. On or about March 13, 2023, Plaintiff applied for full-time employment as a Delivery Professional with GoShare Inc. ("GoShare").

55. Upon applying to GoShare, Plaintiff successfully completed the interview and application process.

56. GoShare extended a job offer to Plaintiff. Accordingly, Plaintiff also completed GoShare's driver's orientation.

57. As part of the application process, GoShare and Plaintiff authorized a background check. Employment with GoShare was conditioned on Plaintiff passing a background check ("consumer report").

58. On or about March 24, 2023, Plaintiff authorized a background check in relation to the GoShare job.

59. Plaintiff was not worried about consenting to a background check report following the pardon and expungement.

60. GoShare contracted with non-party Turn Technologies to conduct background checks, including criminal background checks, on its prospective employees.

61. On or about March 24, 2023, GoShare ordered a criminal background check on Plaintiff from non-party Turn Technologies.

**Defendant Published an Inaccurate Background Check Report to Non-Party Turn Technologies about Plaintiff**

62. Non-Party Turn Technologies contracted with Defendant to conduct background checks, including criminal background checks.

63. On or about March 24, 2023, non-party Turn Technologies ordered a criminal background check on Plaintiff from Defendant.

64. On or about March 28, 2023, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to non-party Turn Technologies.

65. Within its consumer report, Defendant published inaccurate information about Plaintiff.

66. Specifically, within its consumer report about Plaintiff, Defendant sold and reported pertinent details of the criminal records that have been *expunged* and that should have been excluded from the employment purposed consumer report. Thereby defeating the entire purpose in seeking and securing an *expungement* order in the first place.

67. The criminal records reported by Defendant about Plaintiff to non-party Turn Technologies for resale to Plaintiff's prospective employer, were *expunged* and therefore should not have been included in Plaintiff's employment purposed consumer report.

68. A cursory review of the widely available public court records confirms that there were no criminal records reported about Plaintiff.

69. The expunged records should never be included in any consumer reports about Plaintiff and were no longer part of the public record.

70. The sole reason the *expunged* criminal records were included in the consumer report Defendant prepared about Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report

it sold to non-party Turn Technologies for resale about Plaintiff to Plaintiff's prospective employer.

71. Had Defendant followed reasonable procedures, it would have discovered that there were no reportable criminal records related to Plaintiff.

72. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to non-party Turn Technologies for resale to Plaintiff's prospective employer *expunged* criminal records that otherwise should not have been included, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

73. Alternatively, in preparing and selling a consumer report about Plaintiff, wherein Defendant published to Turn Technologies for resale to Plaintiff's employer inaccurate information about Plaintiff, Defendant breached its duty of care and caused Plaintiff's prospective employer to deny his employment application.

**GoShare Denies Plaintiff's Employment Application**

74. On or about March 29, 2023, non-party Turn Technologies resold Defendant consumer report about Plaintiff to Plaintiff's prospective employer, GoShare.

75. That same day, Plaintiff was notified by GoShare that his employment application was denied as a direct result of the **expunged** criminal records published by Defendant and sold to non-party Turn Technologies.

76. In the same notification received from GoShare, Plaintiff was informed that he could not reply to the adverse action communication, that new applications would not be accepted, and new background checks would not be performed.

77. Effectively, and due to Defendant's actions, Plaintiff was banned from any future employment opportunities with GoShare.

78. Shortly thereafter, Plaintiff obtained a copy of the subject consumer report resold by non-party Turn Technologies to Plaintiffs prospective employer. Plaintiff was shocked upon reviewing the *expunged* criminal records contained within the subject employment report.

79. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting both in relation to the position with GoShare, but also the impact of the same on his future.

80. Plaintiff contacted GoShare and informed it that that the criminal records reported on the employment purposed consumer report should not have been reported.

81. Specifically, Defendant reported criminal records that were *pardoned* and *expunged* and published the *pardoned* and *expunged* records in a consumer report about Plaintiff and sold the report to non-party Turn Technologies, who in turn, resold the same to Plaintiff's prospective employer. This exculpatory information was widely available to Defendant prior to publishing Plaintiff's consumer report to non-party Turn Technologies for resale to Plaintiff's prospective employer, but Defendant failed to obtain or perform even a cursory review of such information.

82. Defendant's inaccurate report cost Plaintiff a promising, well-paying job with GoShare.

83. Plaintiff had anticipated earning between $20,000 to $35,000 per year driving for GoShare.

84. Plaintiff is the breadwinner of his household who is responsible for the care of his two young children. The employment opportunity loss caused Plaintiff to experience a great deal of stress about his ability to provide for his family. The anticipated income was intended to cover the costs attendant to housing, but also Plaintiff hoped the income would allow him to provide a better quality of life overall for his family.

85. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

86. At all times pertinent hereto, Defendant was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendant herein.

87. At all times pertinent hereto, Defendant's conduct, as well as that of its respective agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

88. Defendant is aware of the shortcomings of its procedures and intentionally chooses not to comply with the FCRA to lower its costs. Accordingly, Defendant's violations of the FCRA are willful.

89. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

90. In the alternative, Defendant was negligent in that it owed a duty of care, which it breached, and ultimately caused Plaintiff's injuries resulting in actual damages.

91. Further, Defendant defamed Plaintiff by publishing to third parties criminal records that were expunged and should have been excluded, thereby amounting a false statement that the

criminal records *were not* expunged. Defendant was negligent in publishing false statements about Plaintiff.

92. Alternatively, as a result of Defendant's negligence and defamation, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

93. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

### CLAIMS FOR RELIEF
### COUNT I
### 15 .S.C. § 1681e(b)
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

94. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

95. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

96. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

97. At all times pertinent hereto, the above-mentioned employment reports were "consumer report[s]" as that term is defined by 15 U.S.C. § 1681a(d).

98. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

99. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

100. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

101. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## COUNT II

102. **Negligence** Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

103. Defendant owed various duties of care to Plaintiff under common law and the FCRA.

104. Specifically, Defendant owed a duty to Plaintiff with regard to information it published about Plaintiff to a third-party.

105. Defendant knew or should have known the risks inherent to preparing and selling inaccurate consumer reports, including employment denial and employment loss.

106. Defendant's conduct in publishing inaccurate information to a third-party about Plaintiff constitutes negligence.

107. Defendant had a duty to act as would a reasonable CRA to follow reasonable procedures to assure the maximum possible accuracy of the information it reported concerning Plaintiff. Defendant breached that duty by publishing expunged records to a third-party. As a proximate result of this breach of duty, Plaintiff suffered injuries. Those injuries resulted in monetary damages to Plaintiff.

108. Defendant breached its duty to Plaintiff through its conduct alleged herein in violation of the statute at issue herein. Defendant failed to follow reasonable procedures to assure maximum possible accuracy of the information it reported concerning Plaintiff.

109. Plaintiff asserts that Defendant is the actual and legal cause of Plaintiff's injuries.

110. Plaintiff alleges that as a proximate result of Defendant's negligence, Plaintiff has suffered actual harm and actual damages.

111. As a result of Defendant's negligence, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

112. Due to the egregious violations alleged herein, Plaintiff asserts that Defendant breached its duties in an oppressive, malicious, despicable, gross and wantonly negligent manner.

As such, said conduct establishes Defendant's conscious disregard for Plaintiff's rights and entitles Plaintiff to recover punitive damages from Defendant.

## COUNT III
### Defamation Per Se (in the alternative)

113. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

114. Defendant published a false and outrageous statement about Plaintiff by publishing to a third-party criminal records that were expunged and should have been excluded from the consumer report.

115. Defendant knew or should have known that the criminal public records were going to be compiled and repackaged in a consumer report that was ultimately going to be used to make an employment decision.

116. That third party transmitted to Plaintiff's prospective employer the criminal records that were expunged and should have been excluded from the consumer report.

117. By publishing the expunged criminal records to the third parties, the Defendant communicated to those third parties that the criminal records were not expunged, a false statement.

118. Defendant did nothing to verify this defamatory statement prior to publishing the same to third parties.

119. The publishing of the criminal records allowed third parties, including Plaintiff's potential employer, to view the expunged and, thus, non-existent offenses, thereby significantly reducing the Plaintiff's chances of securing employment.

120. Defendant's illegal conduct is the actual and proximate cause of Plaintiff's injuries, which injuries were completely foreseeable.

121.  Plaintiff took the steps necessary to ensure expungement of the criminal records. Plaintiff had zero fault of his own for Defendant's conduct.

122.  The publishing of the criminal records that were expunged caused injury to Plaintiff by deterring a third party from associating with him.

123.  The defamatory statement made by Defendant about the Plaintiff including imputing to him an unexpunged crime of moral turpitude that prejudiced him in his profession or trade, and thus was defamatory per se.

124.  As a result of Defendant's defamatory statement, Plaintiff has suffered a range of actual injuries resulting in substantial damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

125.  Due to the egregious violations alleged herein, Plaintiff asserts that Defendant breached its duties in an oppressive, malicious, despicable, gross, reckless, and wanton manner. As such, said conduct establishes Defendant's conscious disregard for Plaintiff's rights and entitles Plaintiff to recover punitive damages from Defendant.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the following relief:

i.  Determining that Defendant negligently and/or willfully violated the FCRA;

ii.  Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii.  Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv.  Granting further relief, in law or equity, as this Court may deem appropriate and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Dated: May 13, 2025

*/s/*
Susan Mary Rotkis, VSB 40693
CONSUMER JUSTICE LAW FIRM
2290 East Speedway Blvd.
Tucson, AZ 85719
Telephone: (602) 847-1504
Fax: (602) 847-1504
Email: srotkis@consumerjustice.com

*Attorney for Plaintiff*
*John Doe*
