**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| Harry S. Smith, | |
| Plaintiff, | Civil Action No. 1:25-cv-00826 |
| v. | |
| InformData, LLC f/k/a Wholesale Screening Solutions LLC, | Hon. Rossie D. Alston, Jr. |
| Defendant. | |

**INFORMDATA, LLC'S MEMORANDUM IN SUPPORT OF ITS RENEWED MOTION
TO COMPEL ARBITRATION OR FOR DISMISSAL**

Carmen Longoria-Green
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Tel: (202) 263-5282
clongoriagreen@mayerbrown.com

Charles E. Harris, II
Anastasiya Lobacheva
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600
charris@mayerbrown.com
alobacheva@mayerbrown.com

*Attorneys for Defendant InformData, LLC*

# TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................... 1

II. STATEMENT OF FACTS ............................................................................................ 2

   A.  The FCRA and Background Screening ..................................................................... 2

   B.  Plaintiff's Complaint Against Turn ......................................................................... 3

   C.  Plaintiff's Arbitration Against Turn ........................................................................ 4

   D.  Plaintiff's Nearly Identical Complaints Against InformData ................................. 5

III. ARGUMENT .............................................................................................................. 6

   A.  This Court Should Compel Plaintiff to Arbitrate His Claims .................................. 6

      1.    The FAA Governs Plaintiff's Arbitration Agreement. .......................... 6

      2.    Plaintiff Must Arbitrate His Claims. ....................................................... 8

          a.   InformData Is Entitled to Compel Arbitration Under Delaware Law. ........ 8

          b.   Plaintiff's Claims Are Within the Scope of the Arbitration Agreement.  9

          c.   InformData May Enforce Plaintiff's Arbitration Agreement Under the Equitable Estoppel Doctrine. ............................................... 10

          d.   InformData May Enforce Plaintiff's Arbitration Agreement as a Defined Party to the Agreement. ................................................. 13

      3.    The Court Should Stay Plaintiff's Claims Pending Arbitration ......................... 14

   B.  Alternatively, This Court Should Dismiss Plaintiff's Claims ............................... 15

      1.    Plaintiff Fails to Plausibly Allege that InformData is a Consumer Reporting Agency. ............................................................................ 16

          a.   Plaintiff's Allegations that InformData Assembled or Evaluated Information Are Conclusory. .................................................... 16

          b.   The FCRA Does Not Impose Obligations on Entities Like InformData That Are Remote From Employers Who Evaluate Consumer Reports. .......................................................... 17

          c.   Plaintiff Alleges that InformData Acted as a Data Furnisher, Not a Consumer Reporting Agency. ........................................... 20

      2.    Reporting Expunged Convictions Does Not Violate the FCRA. ........................ 22

      3.    Plaintiff's Negligence Claim is Barred by the Economic Loss Doctrine. .......... 24

      4.    Plaintiff's Defamation Per Se Claim Should Be Dismissed Because The Statement Was Substantially True. ............................................... 27

      5.    Alternatively, the FCRA Preempts Plaintiff's State-Law Claims. ..................... 28

IV. CONCLUSION ......................................................................................................... 29

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aldaco v. RentGrow, Inc.*,
    921 F.3d 685 (7th Cir. 2019) ............................................................22, 23

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
    513 U.S. 265 (1995)...........................................................................7

*Alston v. LexisNexis Risk Sols. Inc.*,
    2022 WL 17735808 (D.D.C. Dec. 16, 2022).....................................20

*Alta Berkeley VI C.V. v. Omneon, Inc.*,
    41 A.3d 381 (Del. 2012) ...................................................................13

*Anadarko Petroleum Corp. v. Panhandle E. Corp.*,
    1987 WL 16508 (Del. Ch. Sept. 8, 1987), *aff'd*, 545 A.2d 1171 (Del. 1988) ........................10

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009)...........................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................15

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011)...........................................................................6

*Bahr v. Statesman Journal Co.*,
    624 P.2d 664 (Or. Ct. App. 1981)......................................................27, 28

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)...........................................................................15

*Black v. Powers*,
    48 Va. App. 113 (2006) .....................................................................8

*Bray v. Gamestop Corp.*,
    2018 WL 11226516 (D. Del. Mar. 16, 2018) ...................................24, 26

*Brown v. Ocwen Loan Servicing, LLC*,
    2015 WL 5008763 (D. Md. Aug. 20, 2015) ......................................3

*Brzoska v. Olson*,
    668 A.2d 1355 (Del. 1995) ...............................................................26

*Bugoni v. Employment Background Investigations, Inc.*,
    2022 WL 888434 (D. Md. Mar. 25, 2022), *aff'd*, 2023 WL 3721210 (4th Cir.
    May 30, 2023) ....................................................................................................23

*Carlton v. Choicepoint, Inc.*,
    2009 WL 4127546 (D.N.J. Nov. 23, 2009) ....................................................18, 19

*In re Cohn-Phillips, Ltd.*,
    193 B.R. 757 (Bankr. E.D. Va. 1996) ....................................................................21

*Cup v. Ampco Pittsburgh Corp.*,
    90 F.3d 58 (3d Cir. 2018)..........................................................................................9

*D'Angelo v. Wilmington Med. Ctr., Inc.*,
    515 F. Supp. 1250 (D. Del. 1981)..............................................................17, 18, 19

*Dalton v. Capital Associated Indus., Inc.*,
    257 F.3d 409 (4th Cir. 2001) ..................................................................................21

*Danforth v. Acorn Structures, Inc.*,
    608 A.2d 1194 (Del. 1992) .....................................................................................25

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985)...................................................................................................6

*Dickerson v. New Banner Institute, Inc.*,
    460 U.S. 103 (1983)...........................................................................................22, 23

*DiGianni v. Stern's*,
    26 F.3d 346 (2d Cir. 1994)......................................................................................19

*Douzinas v. Am. Bureau of Shipping, Inc.*,
    888 A.2d 1146 (Del. Ch. 2006)...............................................................................10

*Elliott Assocs., L.P. v. Avatex Corp.*,
    715 A.2d 843 (Del. 1998) .......................................................................................13

*EMSI Acquisition, Inc. v. Contrarian Funds, LLC*,
    2017 WL 1732369 (Del. Ch. May 3, 2017)............................................................13

*Epcon Homestead, LLC v. Town of Chapel Hill*,
    62 F.4th 882 (4th Cir. 2023) .....................................................................................2

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018)...................................................................................................7

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995).................................................................................................13

iii

*Foster v. Health Recovery Servs., Inc.*,
    493 F. Supp. 3d 622 (S.D. Ohio 2020) .....................................................................25

*Fryfogle v. First Nat'l Bank of Greencastle*,
    2009 WL 700161 (W.D. Va. Mar. 17, 2009).........................................................25, 26

*G.D. v. Kenny*,
    15 A.3d 300 (N.J. 2011)........................................................................................27, 28

*Garrison v. Med. Ctr. of Del. Inc.*,
    581 A.2d 288 (Del. 1989) ...........................................................................................26

*GNH Grp., Inc. v. Guggenheim Holdings, L.L.C.*,
    2020 WL 4287358 (D. Del. July 27, 2020), *report and recommendation
    adopted*, 2020 WL 13679908 (D. Del. Aug. 19, 2020) ..........................................8, 11

*Grigson v. Creative Arts Agency*,
    210 F.3d 524 (5th Cir. 2000) .........................................................................11, 12, 13

*Hamer v. Navient Corp.*,
    2019 WL 3936655 (D. Del. Aug. 20, 2019) ................................................................29

*Hardiman v. Aslam*,
    125 N.E.3d 1185 (Ill. App. Ct. 2019) .........................................................................27

*Harman v. Unisys Corp.*,
    356 F. App'x. 638 (4th Cir. 2009) ..............................................................................15

*Harris v. Mariner Fin. LLC*,
    2019 WL 4060336 (E.D. Va. Aug. 28, 2019)................................................................7

*In Peeples v. National Data Research, Inc.*,
    2024 WL 1476201 (N.D. Ga. Feb. 27, 2024) .............................................................23

*Int'l Fid. Ins. Co. v. Mattes Elec., Inc.*,
    2002 WL 1400217 (Del. Super. Ct. June 27, 2002) ...................................................25

*Ishimaru v. Fung*,
    2005 WL 2899680 (Del. Ch. Oct. 26, 2005) ..............................................................10

*Johnson v. Carmax, Inc.*,
    2010 WL 2802478 (E.D. Va. July 14, 2010)................................................................8

*Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
    364 F.3d 274 (5th Cir. 2004) .....................................................................................21

*Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*,
    844 F. Supp. 2d 519 (D. Del. 2012)...........................................................................25

iv

*Lamps Plus, Inc. v. Varela*,
   587 U.S.176 (2019)................................................................................10

*Leichling v. Honeywell Int'l, Inc.*,
   842 F.3d 848 (4th Cir. 2016) ...............................................................28

*Lowery v. Stovall*,
   92 F.3d 219 (4th Cir. 1996) .................................................................21

*Lueckenbach v. Horizon Miss. Pubs., Inc.*,
   2017 WL 473903 (N.D. Miss. Feb. 3, 2017) ......................................27

*Maldonado v. Nat'l Football League*,
   2023 WL 4580417 (S.D.N.Y. July 18, 2023) ......................................11

*Martin v. Hearst Corp.*,
   777 F.3d 546 (2d Cir. 2015)................................................................27

*Mey v. DIRECTV, LLC*,
   971 F.3d 284 (4th Cir. 2020) .................................................................9

*Mills v. City of Norfolk, Virginia*,
   2020 WL 7630647 (E.D. Va. Dec. 22, 2020) .......................................3

*Milton Invs., LLC v. Lockwood Bros., II, LLC*,
   2010 WL 2836404 (Del. Ch. July 20, 2010).........................................9

*Minnifield v. Wells Fargo Bank*,
   2021 WL 4269484 (N.D. Ga. Aug. 4, 2021) .......................................16

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
   473 U.S. 614 (1985)............................................................................10

*Naimoli v. Pro-Football, Inc.*,
   120 F.4th 380 (4th Cir. 2024) ...............................................................8

*Noye v. Johnson & Johnson Services, Inc.*,
   765 F. App'x 742 (3d Cir. 2019) ........................................................12

*Obabueki v. Choicepoint, Inc.*,
   236 F. Supp. 2d 278 (S.D.N.Y. 2002), *aff'd sub nom. Obabueki v. Int'l Bus.*
   *Machines Corp.*, 319 F.3d 87 (2d Cir. 2003).......................................23

*Ori v. Fifth Third Bank*,
   603 F. Supp. 2d 1171 (E.D. Wis. 2009)........................................17, 19

*Parfi Holding AB v. Mirror Image Internet, Inc.*,
   817 A.2d 149 (Del. 2002) ......................................................................9

*Poulos v. City of New Castle*,
2014 WL 7205169 (D. Del. Dec. 15, 2014)................................................................25

*Premium Mortg. Corp. v. Equifax, Inc.*,
583 F.3d 103 (2d Cir. 2009)........................................................................................29

*Ramiro Antonio Malagan Melendez v. Equifax Credit Info. Servs., Transouth Fin.*,
1997 WL 392375 (D.P.R. July 3, 1997) .....................................................................19

*Riley v. Moyed*,
529 A.2d 248 (Del. 1987) ............................................................................................27

*Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*,
2012 WL 1409013 (Del. Super. Ct. Apr. 4, 2012), *aff'd*, 55 A.3d 330 (Del.
2012) ......................................................................................................................24, 25

*Roberts v. Carter-Young, Inc.*,
131 F.4th 241 (4th Cir. 2025) .................................................................................22, 24

*Rota-McLarty v. Santander Consumer USA, Inc.*,
700 F.3d 690 (4th Cir. 2012) ........................................................................................7

*Rzeznik v. Chief of Police of Southampton*,
373 N.E.2d 1128 (Mass. 1978) ...................................................................................27

*Smith v. Lockhart, Morris & Montgomery, Inc.*,
2024 WL 2977391 (S.D. Ohio June 13, 2024) ...........................................................20

*Smith v. Spizzirri*,
601 U.S. 472 (2024).....................................................................................................14

*Soucie v. Virginia Util. Prot. Serv., Inc.*,
2023 WL 2991487 (W.D. Va. Apr. 18, 2023) ..............................................................8

*Stephenson v. Capano Dev., Inc.*,
462 A.2d 1069 (Del. 1983) ..........................................................................................26

*Theuerkauf v. United Vaccines Div. of Harlan Sprague Dawley, Inc.*,
821 F. Supp. 1238 (W.D. Mich. 1993) ........................................................................26

*In re Titanium Dioxide Antitrust Litig.*,
962 F. Supp. 2d 840 (D. Md. 2013)..............................................................................11

*United States v. Doe*,
36 F. Supp. 2d 143 (S.D.N.Y. 1999).............................................................................23

*United States v. Savannah River Nuclear Sols., LLC*,
2016 WL 7104823 (D.S.C. Dec. 6, 2016) ...................................................................16

*Wadley v. Equifax Info. Servs.*,
LLC, 396 F. Supp. 2d 677 (E.D. Va. 2005) ....................................................21

*Walker v. Fabrizio & Brook, P.C.*,
2017 WL 5010781 (E.D. Mich. Nov. 2, 2017) ..........................................19

*White v. Trans Union LLC*,
2025 WL 409660 (E.D. Va. Feb. 5, 2025)..................................................29

*Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*,
2006 WL 2473665 (Del. Ch. Aug. 22, 2006) ......................................8, 9, 11, 12

*Zeller v. Samia*,
758 F. Supp. 775 (D. Mass. 1991) ............................................................19

**Statutes**

11 Del. C. §§ 4371-78.............................................................................................27

11 Del. C. § 4372 ....................................................................................................24

9 U.S.C. § 2............................................................................................................6, 7

9 U.S.C. § 4.................................................................................................................7

15 U.S.C. § 1681 ............................................................................................ *passim*

15 U.S.C. § 1681a(f) .........................................................................................16, 20

**Other Authorities**

12 C.F.R. § 1022.41 ...................................................................................................3

12 C.F.R. § 1022.41(c)........................................................................................5, 20

CFPB, *Key Dimensions and Processes in the U.S. Credit Reporting System: A review of how the nation's largest credit bureaus manage consumer data* (Dec. 2012), https://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf ...............................................................................2

CFPB, *Market Snapshot: Background Screening Reports* (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf...................................................2

Eugene Volokh, *Libel by Omission of Exculpatory Legal Decisions*, 97 Notre Dame L. Rev. 351, 355 (2021) ...................................................................27

Federal Rule of Evidence 201........................................................................................3

# I.
## INTRODUCTION

This case involves a straightforward application of the Federal Arbitration Act's ("FAA") strong presumption in favor of arbitration and the Fair Credit Reporting Act's (the "Act" or "FCRA") clear statutory framework. Plaintiff Harry S. Smith's claims arise from the same set of facts previously addressed in a binding arbitration against Turn Technologies, Inc. ("Turn"). While the arbitration of those claims was ongoing—and apparently anticipating an adverse decision— Plaintiff initiated a related action in Delaware against InformData, LLC ("InformData"), asserting nearly identical allegations. After the arbitrator indeed dismissed Plaintiff's claims against Turn, Plaintiff voluntarily dismissed the Delaware suit and now seeks to relitigate the same issues in this Court. The new complaint merely recasts the same allegations, contending that InformData, rather than Turn, was the "consumer reporting agency" responsible for the alleged inaccuracies in his background report that Turn provided to his former employer, Trash Butler, LLC ("Trash Butler").

Plaintiff's attempt to circumvent the prior arbitration and relitigate these issues in federal court is unavailing for several reasons. First, Plaintiff's claims fall squarely within the broad scope of the arbitration agreement he entered with Turn, which expressly covers all disputes "arising out of, relating to, or associated with" Turn's services. Under well-established Delaware law, InformData is entitled to enforce this arbitration agreement both under the doctrine of equitable estoppel—given Plaintiff's allegations of concerted misconduct by Turn and InformData—and as a defined beneficiary under the arbitration agreement. Even if this case were not subject to arbitration, Plaintiff's claims fail on the merits. The Act does not provide a private right of action against data furnishers like InformData, and Plaintiff's conclusory allegations do not plausibly establish that InformData acted as a "consumer reporting agency." Moreover, Plaintiff's state-law

1

claims for negligence and defamation *per se* are, respectively, barred by the economic loss doctrine and substantial truth defense and are also preempted by the FCRA.

For these reasons, and as set forth below, the Court should compel arbitration and stay this action, or, in the alternative, dismiss Plaintiff's Amended Complaint (the "Complaint") in its entirety and with prejudice.

**II.**
**STATEMENT OF FACTS**

**A.    The FCRA and Background Screening**

A clear understanding of the background screening industry is essential to resolving this Motion. Plaintiff has brought all his cases for an alleged violation of an FCRA provision governing a "consumer reporting agency," defined as an entity engaged in "assembling or evaluating" consumer information to furnish consumer reports. 15 U.S.C. § 1681a(f). To prepare reports, these agencies collect information (e.g., criminal history) on the report's subject from various sources and assemble some or all of it into a comprehensive report. CFPB, *Market Snapshot: Background Screening Reports*, 7-9 (Oct. 2019).[1] The report Turn prepared for Plaintiff, incorporated into his Complaint by reference, exemplifies this process. *See* Harris Decl., Ex. 6. [2]

"Data furnishers" are sources of the information that these agencies evaluate and assemble to prepare a report. For example, a consumer reporting agency may request that a furnisher supply county-level criminal data for anyone with a particular name and birthdate. The furnisher then

---

[1] https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf.

[2] In deciding a motion to dismiss, the Court may "consider documents … incorporated by reference … so long as they are integral to the complaint and authentic." *Epcon Homestead, LLC v. Town of Chapel Hill*, 62 F.4th 882, 885 (4th Cir. 2023). Plaintiff's background report easily satisfies these requirements. *See, e.g.*, Am. Compl. ¶¶ 89-92.

provides this "raw" data to the consumer reporting agency, which is responsible for determining whether the information matches a particular consumer. *See* CFPB, *Key Dimensions and Processes in the U.S. Credit Reporting System: A review of how the nation's largest credit bureaus manage consumer data,* at 17 (Dec. 2012).[3] The Act's regulations define a "furnisher" as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." *See* 12 C.F.R. § 1022.41(c).

While a plaintiff can bring an action against a consumer reporting agency for providing inaccurate information, *see* 15 U.S.C. §§ 1681o(a), 1681n(a), a person has *no* private right of action against a data furnisher for doing so. *See id.* § 1681s-2(c)(1).

**B.    Plaintiff's Complaint Against Turn**

On June 13, 2023, Plaintiff filed against Turn a nearly identical complaint to the one here. *Smith v. Turn Techs., Inc.,* No. 1:23-cv-00647, ECF No. 1 (*"Smith v. Turn"*). In that complaint, Plaintiff alleged that Turn violated section 1681e(b) of the Act by not following reasonable procedures to assure accuracy when preparing his background report for a contract job at GoShare, Inc. ("GoShare"). *Id.* ¶¶ 109-16.[4] He alleged that Turn is a consumer reporting agency that "compile[s] and maintain[s] files on consumers" and provides "consumer reports generated from its database and furnishes these consumer reports to employers." *Id.* ¶ 2. Specifically, he alleged

---

[3] https://files.consumerfinance.gov/f/201212_cfpb_credit_reporting-white-paper.pdf.

[4] This Court may "take judicial notice of docket entries, pleadings, and papers in other cases." *Mills v. City of Norfolk, Virginia*, 2020 WL 7630647, at *4 (E.D. Va. Dec. 22, 2020) (quoting *Brown v. Ocwen Loan Servicing, LLC*, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015)). Additionally, under Federal Rule of Evidence 201(c)(2), the Court "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2). Under Federal Rule of Evidence 201(b)(2), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it … can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id.*

that Turn was the consumer reporting agency that prepared a "employment report" that contained several allegedly expunged felony convictions and provided the report to GoShare. *Id.* ¶¶ 58, 64; *see also* Harris Decl., Ex. 6. Plaintiff claimed that GoShare did not hire him due to the report and, as a result, he suffered various types of actual damages. *Id.* ¶¶ 10, 12.

Plaintiff's claims against Turn were subject to an arbitration agreement in Turn's Terms of Use (the "Terms"). Harris Decl. Ex. 3 § 14. That agreement states, "You and Turn agree to arbitrate all disputes and claims between us that arise out of, relate to, or are associated with [Turn's] Services. *** References to '**Turn**,' '**you**,' and '**us**'" include "all" "beneficiaries of the Services." *Id.* § 14.1. "Services" means "products and services" that Turn provides, including "worker screening." *Id.* at 1. On March 24, 2023, Plaintiff agreed to Turn's Terms, provided as a hyperlink, by clicking a box certifying that "[b]y proceeding further you agree" to the contract. *Id.* He also assented to the Terms with his electronic signature. Harris Decl. Ex. 5.

On July 13, 2023, Turn's counsel sent a letter to Plaintiff's counsel requesting that Plaintiff voluntarily dismiss his lawsuit in favor of arbitration. Harris Decl. Ex. 4. The parties subsequently stipulated to staying his lawsuit pending arbitration. *Smith v. Turn*, ECF No. 15. The court granted the stay on August 1, 2023. *Id.*

## C.    Plaintiff's Arbitration Against Turn

Plaintiff filed an arbitration demand against Turn on November 3, 2023, and amended it on July 12, 2024. Harris Decl. Ex. 1. Plaintiff's allegations in arbitration largely mirrored those in his complaint. *Compare id., with Smith v. Turn*, No. 1:23-cv-00647, ECF No. 1.

In the arbitration, Turn disclosed that it hired Wholesale Screening Solutions LLC, ("WSS"), InformData's predecessor, to do a county-level search for any criminal records on "Harry Samuel Smith," born July 30, 1976. Harris Decl. Ex 2 at 1-2; Agee Decl. ¶¶ 5-6. According to testimony adduced during the arbitration, WSS conducted a search of court records and

discovered several felony convictions that met the relevant criteria. WSS then furnished this information to Turn. *See* Harris Decl. Ex. 2 at 1-2.

On February 21, 2025, arbitrator William Johnston granted Turn's dispositive motion and dismissed Plaintiff's claims against Turn, concluding that Plaintiff was "unable to satisfy th[e] burden" of "establishing the claims he has asserted under the FCRA." *Id.* at 3.

## D.     Plaintiff's Nearly Identical Complaints Against InformData

Plaintiff filed his lawsuit against InformData in the District of Delaware on January 6, 2025. *Smith v. InformData, LLC*, No. 1:23-cv-00015, ECF No. 1. As noted above, he dismissed that lawsuit on February 28, 2024 (*id.*, ECF No. 15), and he has now filed an identical lawsuit here, adding a defamation claim. But he faces a problem with his suits against InformData. As noted above, there is no private right of action against an entity like InformData that "furnishes information relating to consumers" to a consumer reporting agency. 12 C.F.R. § 1022.41(c); *see also* 15 U.S.C. § 1681s-2(c)(1). To sidestep this issue, Plaintiff alleges that *InformData* is the consumer reporting agency that employed unreasonable procedures in preparing his background report, and that Turn merely provided that report to GoShare. Am. Compl. ¶¶ 2, 81.[5] Plaintiff also brought negligence claims in both actions, alleging that InformData owed "a duty to act as would a reasonable" consumer reporting agency and it "breached that duty by publishing expunged records" to Turn. *Id.* ¶¶ 113-129. Plaintiff's defamation claim in the latest lawsuit alleges that InformData "publish[ed] to a third party" criminal records that were expunged. *Id.* ¶¶ 130-42.

A close examination of Plaintiff's allegations against InformData reveals they are substantively identical to those asserted against Turn. *Compare*, *e.g.*, Am. Compl. ¶¶ 73-75 ("[InformData] completed its consumer report about Plaintiff and sold the same to [Turn]. . . .

---

[5] On July 22, 2025, Plaintiff filed a First Amended Complaint, ECF No. 43, pursuant to the Court's Order to file the Complaint under his real name. *See* ECF No. 42.

Within its consumer report, [InformData] published inaccurate information about Plaintiff.") *with Smith v. Turn*, ECF No. 1 ¶¶ 54-55 ("[Turn] completed its employment report about Plaintiff and sold the same to GoShare. Within its employment report, [Turn] published inaccurate information about Plaintiff."). Plaintiff similarly alleges that InformData "published inaccurate information about Plaintiff," Am. Compl. ¶ 75, "reported pertinent details of the criminal records that have been expunged," *id.* ¶ 76, and "failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b)," *id.* ¶ 83.

Plaintiff does *not* allege, however, that InformData provided a report directly to GoShare or that it had any contact with him. Rather, he claims that InformData "reported a consumer report containing inaccurate information about Plaintiff to [Turn] which in turn reported that inaccurate information to Plaintiff's employer [GoShare]." Am. Compl. ¶ 3; *see also id.* ¶ 92. Plaintiff thus seeks the same damages from InformData as he did from Turn, based on Turn providing a background report to GoShare. *Compare* Am. Compl. ¶¶ 105-112 *with Smith v. Turn*, ECF No. 1 ¶¶ 109-116. In all, Plaintiff's Complaint against InformData relies on Turn's conduct over a dozen times. Am. Compl. ¶¶ 3, 5-6, 63-73, 77, 81, 89, 92.

### III.
### ARGUMENT

**A.    This Court Should Compel Plaintiff to Arbitrate His Claims.**

    **1.    The FAA Governs Plaintiff's Arbitration Agreement.**

The FAA provides that arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law." 9 U.S.C. § 2. "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011). This "liberal federal policy favoring arbitration agreements" applies "notwithstanding any state

substantive or procedural policies to the contrary." *Id*. at 346 (quotations and citation omitted). The FAA "leaves no [room] for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985); 9 U.S.C. § 4; *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018) (reiterating the FAA's "emphatic directions" that arbitration agreements be enforced according to their terms).

The FAA applies to any arbitration agreement that is "written" and in a contract "evidencing a transaction involving commerce." 9 U.S.C. § 2. The United States Supreme Court has explained that the FAA "signals an intent to exercise Congress' commerce power to the full." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 277 (1995). Turn's Terms satisfy both criteria. They include a written arbitration agreement. Harris Decl. Ex. 3 § 14.1. And they concern the Services of Turn, an entity with a principal place of business in Illinois (*Smith v. Turn*, ECF No. 1 ¶ 15), to Plaintiff, a Delaware resident (*id*. ¶ 14; Am. Compl. ¶ 20), and thus easily satisfy the commerce requirement. *See*, *e.g., Rota-McLarty v. Santander Consumer USA, Inc*., 700 F.3d 690, 697 (4th Cir. 2012) ("consumer credit arrangement between a citizen of one state and a financing company in another" sufficiently implicated interstate commerce); *Harris v. Mariner Fin. LLC,* 2019 WL 4060336, at *4 n.15 (E.D. Va. Aug. 28, 2019) (noting that "[c]ourts have broadly construed the FAA's requirement that a transaction involve interstate commerce"). Moreover, Plaintiff's arbitration agreement specifies that it is governed by the FAA. Harris Decl. Ex. 3 § 14.1(c). Thus, the FAA, and its accompanying liberal policy in favor of arbitration, applies.

Nor is there any doubt that Plaintiff assented to his arbitration agreement with Turn. Plaintiff manifested assent to the Terms containing the agreement by signing his name and clicking a box stating that "[b]y proceeding further you agree" to the Terms; Plaintiff indeed proceeded

further, providing his personal information, electronic signature, and authorizing Turn to prepare his report. Harris Decl. Ex. 5. He thus cannot seriously claim that he did not agree to arbitration.

### 2. Plaintiff Must Arbitrate His Claims.

InformData is entitled to defend its claims in arbitration, even though it is not a signatory to Plaintiff's agreement. Nonsignatories to an arbitration agreement may compel arbitration when permitted under "traditional principles of state law." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009); *Naimoli v. Pro-Football, Inc.,* 120 F.4th 380, 386-87 (4th Cir. 2024). As discussed below, Delaware law applies here. *Infra* Section III.A.2.a. "Delaware allows a nonsignatory to a contract to compel a signatory to arbitrate under [] equitable estoppel" where (1) the plaintiff's claims fall within the scope of the arbitration agreement, and (2) the "signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *GNH Grp., Inc. v. Guggenheim Holdings, L.L.C*., 2020 WL 4287358, at *6 (D. Del. July 27, 2020), *report and recommendation adopted*, 2020 WL 13679908 (D. Del. Aug. 19, 2020); *see also Wilcox & Fetzer, Ltd. v. Corbett & Wilcox,* 2006 WL 2473665, at **4-5 (Del. Ch. Aug. 22, 2006). Arbitration is also required when applying Delaware's traditional contract interpretation principles. *Infra* Section III.A.2.d.

### a. InformData Is Entitled to Compel Arbitration Under Delaware Law.

Delaware law dictates the traditional principles that apply here. "[A] federal court facing a federal question that incorporates a state law issue should apply the conflicts rules of the state in which it sits absent a compelling federal interest dictating otherwise." *See Johnson v. Carmax, Inc.*, 2010 WL 2802478, at *2 (E.D. Va. July 14, 2010). No such interest exists here, so Virginia's choice of law rules apply. *Id.; see also Soucie v. Virginia Util. Prot. Serv., Inc.,* 2023 WL 2991487, at *4 (W.D. Va. Apr. 18, 2023). In Virginia, "the law of the place where the contract was made"

governs questions of contract interpretation and enforceability. *Soucie,* 2023 WL 2991487, at *4 (quoting *Black v. Powers*, 48 Va. App. 113, 128 (2006) (collecting cases) (cleaned up)). The place of contracting is Delaware, where Plaintiff lived when he accepted his arbitration agreement. *See* Am. Compl. ¶ 20. As shown below, application of Delaware law compels arbitration here.

   **b.**  **Plaintiff's Claims Are Within the Scope of the Arbitration Agreement.**

The scope of Plaintiff's arbitration agreement unquestionably encompasses his claims against InformData. The agreement covers all disputes that "arise out of, relate to, or are associated with [Turn's] Services . . . or Turn." Harris Decl. Ex. 3 § 14.1. Delaware courts hold that arbitration agreements using the language "aris[e] out of," and "relat[e] to" are indicative of a broad arbitration agreement and, thus, all possible claims that "touch on" the subject matter contemplated by the agreement are within its scope. *Wilcox & Fetzer*, 2006 WL 2473665, at *3 (quoting *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 156 (Del. 2002)); *see also Milton Invs., LLC v. Lockwood Bros., II, LLC*, 2010 WL 2836404, at *6 (Del. Ch. July 20, 2010).

Here, Plaintiff's claims against InformData clearly arise out of and relate to Turn's Services. Plaintiff alleges that InformData provided inaccurate information to Turn, Am. Compl. ¶ 3, implicating Turn's "worker screening" services that it provided to Plaintiff, Harris Decl. Ex. 3 at 1. In particular, Plaintiff alleges that InformData "reported a consumer report containing inaccurate information about Plaintiff to [Turn] which in turn reported that inaccurate information to Plaintiff's employer," Am. Compl. ¶ 3, that InformData "performed a cursory review of the widely available public court records . . . prior to publishing Plaintiff's report to [Turn] which published the same to Plaintiff's employer," *id.* ¶ 6, and that "the criminal records reported by [InformData] about Plaintiff to [Turn] for resale to Plaintiff's prospective employer . . . should not have been included in Plaintiff's employment purposed consumer report," *id.* ¶ 67. All these allegations involve Turn's furnishing worker screening services to Plaintiff.

If there was any doubt about the scope of Plaintiff's arbitration agreement, courts apply a "presumption in favor of arbitrability" when, like here, "the arbitration clause is broadly worded." *Mey v. DIRECTV, LLC*, 971 F.3d 284, 294 (4th Cir. 2020); *see also Cup v. Ampco Pittsburgh Corp.,* 90 F.3d 58, 64-65 (3d Cir. 2018) ("[A] court may not deny a motion to compel arbitration 'unless it may be said with positive assurance that the ... arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" (citations omitted)); *Anadarko Petroleum Corp. v. Panhandle E. Corp.,* 1987 WL 16508, at *3 (Del. Ch. Sept. 8, 1987), *aff'd*, 545 A.2d 1171 (Del. 1988) (applying "federal policy favoring arbitration," including that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration" (citation omitted)). Indeed, Plaintiff's arbitration agreement specifies that it is "intended to be broadly interpreted" and "includes ... all claims arising out of or relating to any aspect of [Plaintiff and Turn's] relationship." Harris Decl. Ex. 3 § 14.1(a). Any uncertainty thus must be "resolved in favor of arbitration." *Lamps Plus, Inc. v. Varela*, 587 U.S.176, 189 (2019); *accord Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625 n.13 (1985) (so long as allegations "touch matters covered by" the arbitration clause, courts "properly resolve[] any doubts in favor of arbitrability"). When applying the presumption here, Plaintiff's claims against InformData fall squarely within the arbitration agreement's scope.

### c.    InformData May Enforce Plaintiff's Arbitration Agreement Under the Equitable Estoppel Doctrine.

The equitable estoppel doctrine further compels arbitration of Plaintiff's claims. In Delaware, "[u]nder abundant authority," "non-signatories are permitted to compel signatories to arbitrate disputes under [the] theory of equitable estoppel." *Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1153 (Del. Ch. 2006); *see also Ishimaru v. Fung*, 2005 WL 2899680, at *18 (Del. Ch. Oct. 26, 2005) (applying "well-established proposition that a signatory to an [a]rbitration

[c]lause . . . may be required to arbitrate with a non-signatory when … concepts of equitable estoppel dictate that result").

As relevant here, Delaware courts allow nonsignatories to compel arbitration when the signatory "raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one … of the signatories to the contract." *Wilcox & Fetzer*, 2006 WL 2473665, at *5 (quoting *Grigson v. Creative Arts Agency*, 210 F.3d 524, 527 (5th Cir. 2000)); *accord GNH Grp.*, 2020 WL 4287358, at *6.[6] Indeed, application of equitable estoppel is warranted when a plaintiff alleges "coordinated behavior between signatories and nonsignatories [that are] based on the same facts, are inherently inseparable, [and] fall within the scope of the arbitration clauses at issue." *Maldonado v. Nat'l Football League*, 2023 WL 4580417, at *4 (S.D.N.Y. July 18, 2023) (quoting *In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840, 851 (D. Md. 2013)) (applying Delaware law).

There is no question that Plaintiff's allegations against Turn and InformData are "based on the same facts" and are "inherently inseparable." *Id.* In both his pleadings against Turn, Plaintiff alleges that Turn "failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the employment report it sold about [Plaintiff] to [Plaintiff's] prospective employer." *Smith v. Turn*, ECF No. 1 ¶ 62, Harris Decl. Ex. 1 ¶ 63. He raises the same allegations in his Complaint against InformData, alleging that "[InformData] failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold to [Turn] for resale about Plaintiff to Plaintiff's prospective employer." Am. Compl. ¶ 70. Considering the two cases together, Plaintiff alleges that InformData

---

[6] Delaware courts also allow non-signatories to invoke equitable estoppel when the signatory "rel[ies] on the terms of the written agreement in asserting its claims against the nonsignatory." *Wilcox & Fetzer*, 2006 WL 2473665, at *5. InformData is not invoking this estoppel theory.

11

furnished inaccurate data to Turn and that Turn provided the inaccurate data to GoShare. Importantly, Plaintiff did not withdraw his previous allegations against Turn by filing this lawsuit against InformData. *See* Harris Decl. Ex. 2. By accusing Turn of being the consumer reporting agency that illegally reported inaccurate data to GoShare and accusing InformData of being the consumer reporting agency that illegally reported the inaccurate data to GoShare via Turn, Plaintiff plainly accuses both Turn and InformData of interdependent misconduct.

In an analogous case, the Third Circuit applied estoppel principles in reversing a district court's order denying a motion to compel arbitration. In *Noye v. Johnson & Johnson Services, Inc.*, the plaintiff alleged that a staffing company provided a background report containing false information to Johnson & Johnson, a prospective employer that did not hire him. 765 F. App'x 742, 744 (3d Cir. 2019). Plaintiff and the staffing agency, but not Johnson & Johnson, signed an arbitration agreement. *Id.* Plaintiff then sued both the staffing agency and Johnson & Johnson for violating the FCRA. *Id.* Applying Michigan law, which adheres to the same equitable estoppel principles as Delaware, the court held that those principles applied. *See id.* at 748. Like the plaintiff in *Noye*, who "collectively accus[ed]" both defendants of "failing to provide [him] with proper background check information," Plaintiff jointly accuses Turn and InformData of failing to provide GoShare with his correct criminal history. Because Plaintiff "fail[s] to allege tortious acts by [InformData] that are separate and apart from [Turn]," the only conclusion here is that the complaints and arbitration demand "assert[ed] concerted misconduct by all parties." *Id.* at 748.

Moreover, the principles animating equitable estoppel counsel its application here. As Delaware courts note, if a plaintiff could litigate claims of interconnected conduct between a signatory and nonsignatory, "the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Wilcox*

*& Fetzer*, 2006 WL 2473665, at *5 (quoting *Grigson*, 210 F.3d at 527). As the court in *Grigson* recognized, not compelling arbitration against InformData here would "in essence" render Turn "a party" in the litigation. 210 F.3d at 528. Because Plaintiff alleges that both Turn and InformData provided the same alleged misinformation to GoShare, determining which, if any, party is at fault would inevitably subject Turn to costly third-party discovery that Plaintiff agreed to address in arbitration. The "resulting loss" of "time and money because of [Turn's] required participation in the proceeding" contravenes Plaintiffs' own agreement to arbitrate his claims and the efficiency principles underlying the federal policy favoring arbitration. *Id.*

### d. InformData May Enforce Plaintiff's Arbitration Agreement as a Defined Party to the Agreement.

InformData may also compel arbitration because it falls within the definition of a party contemplated by Plaintiff's arbitration agreement. Courts apply "ordinary state-law principles that govern the formation of contracts" in deciding if parties agreed to arbitrate certain matters. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995). "Delaware courts interpret contract terms according to their plain, ordinary meaning," *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012), and "a court interpreting any contractual provision . . . must give effect to all terms of the instrument." *Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998).

Here, the arbitration agreement provides that Plaintiff and "Turn" "agree to arbitrate" disputes. Harris Decl. Ex. 3 § 14.1(a). References to "Turn" include "*all* . . . beneficiaries of [Turn's] Services" under any agreement between Plaintiff and Turn. *Id.* (emphasis added). Given that the arbitration agreement does not define the term "beneficiaries," it is appropriate to look to its dictionary definition. "Delaware courts may look to dictionaries to aid in the search for plain meaning where contract terms are undefined." *EMSI Acquisition, Inc. v. Contrarian Funds, LLC*,

2017 WL 1732369, at *11 n.65 (Del. Ch. May 3, 2017). A "beneficiary" is "a person or thing that receives help or an advantage from something: one that benefits from something."[7]

Under this ordinary meaning, InformData is a "beneficiary" because it received an "advantage from" the services that Turn provided to Plaintiff: a financial benefit from Turn for searching court records and furnishing Plaintiff's criminal records that Turn used in his report. InformData charged Turn a fee and was paid for its services. Agee Decl. ¶ 8. InformData is thus a "beneficiary" under Plaintiff's arbitration agreement.

While the meaning of the term "all beneficiaries" is clear, and InformData clearly falls within the plain-language definition of that term, as discussed, any ambiguity in a broad arbitration clause must be resolved in favor of arbitration. *Supra* pp. 9-10. It is hard to imagine a broader arbitration agreement. The agreement explicitly states it is to be broadly interpreted, applies to any disputes that "arise out of, relate to, and are associated with" Turn's Services, and includes "*all*" the beneficiaries of Turn's Services as covered parties; indeed, the agreement defines "Turn" expansively to encompass a laundry list of persons associated with Turn, such as "affiliates, agents, employees, and all authorized or unauthorized users . . . of [Turn's] Services." Harris Decl. Ex. 3 § 14.1(a). Applying the presumption in favor of arbitrability to such language, as this Court must, Plaintiff's broad arbitration agreement encompasses the claims he asserts against InformData.

### 3.    The Court Should Stay Plaintiff's Claims Pending Arbitration.

Section 3 of the FAA provides that, "on application of one of the parties," a district court "shall . . . stay the trial of the action" if the action involves "any issue referable to arbitration." 9 U.S.C. § 3; *accord*, *e.g.*, *Smith v. Spizzirri*, 601 U.S. 472, 478-79 (2024). As discussed, the underlying issues are referable to arbitration. A stay is therefore appropriate.

---

[7] Beneficiary, Merriam-Webster, https://www.merriam-webster.com/dictionary/beneficiary (last visited June 15, 2025).

**B.    Alternatively, This Court Should Dismiss Plaintiff's Claims.**

If this Court disagrees that Plaintiff's claims belong in arbitration, it should nonetheless dismiss Plaintiff's Complaint for failure to state a claim. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679; *see also Harman v. Unisys Corp.*, 356 F. App'x 638, 640 (4th Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* at 678. Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Applying this standard, Plaintiff's claim under section 1681e(b) of the FCRA should be dismissed. Plaintiff does not plausibly allege that InformData qualifies as a "consumer reporting agency" subject to liability under section 1681e(b), nor does he allege that InformData reported criminal information that would give rise to such liability. Additionally, Plaintiff's negligence claim fails because he seeks only economic damages, and his defamation claim is defective because his background report is substantially true. Finally, Plaintiff's attempt to impose state-law requirements on a mere furnisher of information is preempted by the FCRA and should be rejected.

1.    **Plaintiff Fails to Plausibly Allege that InformData is a Consumer Reporting Agency.**

Plaintiff's claim under section 1681e(b) of the FCRA requires him to plausibly allege that InformData acted as a "consumer reporting agency" when it obtained his criminal records and furnished them to Turn for the preparation of his background report. He fails to do so.

a.    **Plaintiff's Allegations that InformData Assembled or Evaluated Information Are Conclusory.**

Plaintiff's Complaint does not plausibly allege that InformData "assembled or evaluated" criminal data about him in a manner that would render InformData a "consumer reporting agency" under section 1681a(f). That provision defines a consumer reporting agency as "any person which, for monetary fees, dues … regularly engages … in the practice of assembling or evaluating consumer credit information or other information." 15 U.S.C. § 1681a(f). Rather than providing factual support, Plaintiff's Complaint merely recites this statutory definition in a conclusory, copy-and-paste fashion. *Compare* Am. Compl. ¶ 23, *with* 15 U.S.C. § 1681a(f). Such threadbare recitals are insufficient to state a claim. *See Minnifield v. Wells Fargo Bank*, 2021 WL 4269484, at *5 (N.D. Ga. Aug. 4, 2021) (finding that a complaint failed to plausibly allege defendant was a "debt collector" under the Fair Debt Collection Practices Act where it offered only a "threadbare allegation—which essentially parrots part of the statutory definition of 'debt collector'" and lacked factual content to support the conclusory assertion) (collecting cases).

Moreover, as discussed below, Plaintiff's own factual allegations contradict his conclusory allegation that InformData "regularly engages in the practice of evaluating and/or assembling information on consumers." As courts have recognized, when a complaint's general, conclusory allegations are contradicted by its more specific factual allegations, "the latter control, and the court is not obligated to accept the general allegation as true in deciding a Rule 12(b)(6) motion."

*United States v. Savannah River Nuclear Sols., LLC*, 2016 WL 7104823, at *18 (D.S.C. Dec. 6, 2016). Accordingly, Plaintiff fails to state a claim.

### b.    The FCRA Does Not Impose Obligations on Entities Like InformData That Are Remote From Employers Who Evaluate Consumer Reports.

Plaintiff's Complaint contains no allegations that InformData provided GoShare with the report on which GoShare allegedly based its decision not to hire Plaintiff, nor does it allege that InformData had any contact with either Plaintiff or GoShare. *See supra* p. 6. Courts nationwide have held that entities that are "remote from those decisionmakers who rely upon 'consumer reports' in making credit and other decisions" do not "assemble" or "evaluate" information about a consumer. *D'Angelo v. Wilmington Med. Ctr., Inc.*, 515 F. Supp. 1250, 1253 (D. Del. 1981), and excludes entities that are merely "[o]btaining and forwarding information" to a consumer reporting agency. *Ori v. Fifth Third Bank*, 603 F. Supp. 2d 1171, 1175 (E.D. Wis. 2009).

Indeed, Congress did not intend the "duties imposed on consumer reporting agencies" to apply to "entities remote from the one making the relevant credit or employment decision," like InformData. *D'Angelo*, 515 F. Supp. at 1253. In the leading case on this issue, the court held that a debt collector who obtains information about unpaid debts and then furnishes that information to a consumer reporting agency does not itself qualify as a consumer reporting agency. *Id.* So too here. According to Plaintiff's own allegations, InformData cannot be considered a consumer reporting agency because it merely obtained information for "Harry Samuel Smith" and passed it on Turn. By allegedly "scrap[ing]" data from public sources, Am. Compl. ¶ 44, InformData did not "assemble" or "evaluate" any information about Plaintiff—it merely obtained and passed the information on to Turn.

That conclusion makes sense based on the structure and text of the FCRA. The court in *D'Angelo* concluded that it would be impracticable to impose the FCRA's duties on entities that

are steps removed from the decisionmaker evaluating a consumer report. For example, section 1681e(a) requires an employer to identify itself and certify that the information it obtains from a consumer reporting agency will only be used for a specific purpose. The court explained that "[a]s a practical matter," a source of information, such as InformData, that "has no contact with the ultimate user of the credit information," such as GoShare, "cannot be expected to satisfy the obligations imposed by the Act on consumer reporting agencies." *Id*. at 1253-54. Similarly, the court observed that under an earlier version of section 1681m(a),[8] an employer that denies employment based on information contained in a report from a consumer reporting agency, must "advise the consumer . . . and supply the name and address of the consumer reporting agency." *See id*. (quoting 15 U.S.C. § 1681m(a) (prior to amendment)).[9] It would be unreasonable to interpret the FCRA as requiring an employer, such as GoShare, that had no contact with or knowledge of a company like InformData to advise customers about such entities.

---

[8] The current version of section 1681m(a) is effectively the same. It provides that "[i]f any person takes any adverse action with respect to any consumer that is based …on any information contained in a consumer report, the person shall," among other things, provide the consumer "the name, address, and telephone number of the consumer reporting agency …that furnished the report to the person." 15 U.S.C. § 1681m(a).

[9] There are numerous other provisions in the FCRA that similarly contemplate a direct relationship between the consumer reporting agency, the consumer, and the employer making use of a consumer report. *See, e.g*., 15 U.S.C. § 1681b(b)(1)-(2) ("A consumer reporting agency may furnish a consumer report for employment purposes only if" the employer "who obtains such report from the agency certifies to the agency that" "a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured" and "the consumer has authorized in writing … the procurement of the report" by the employer); 15 U.S.C. § 1681k(a) ("A consumer reporting agency which furnishes a consumer report for employment purposes and . . . reports items of information on consumers which are matters of public record " may "at the time such public record information is reported to the *user of such consumer report*, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported" (emphasis added)); 15 U.S.C. § 1681g(a)(3)(A) (requiring a consumer reporting agency to maintain and disclose the identity of each employer that "procured a consumer report" for "employment purposes").

Following *D'Angelo's* reasoning, courts nationwide have repeatedly rejected attempts to characterize a mere source of information to a consumer reporting agency as itself a consumer reporting agency, often at the pleading stage. For example, in *Carlton v. Choicepoint, Inc.*, the plaintiff asserted FCRA claims against Choicepoint, including under section 1681e(b), alleging it was a consumer reporting agency. Choicepoint "collect[s] and communicate[s] public records to consumer reporting agencies," such as "bankruptcies, judgments, and tax liens." 2009 WL 4127546, at *1 (D.N.J. Nov. 23, 2009) (collecting cases). Disregarding the complaint's conclusory allegations, the court held that the plaintiff did not plausibly allege that Choicepoint and related defendants "assemble or evaluate any of the information they collect." *Id.* at *4. Rather, the factual allegations showed that Choicepoint merely obtained information and passed it along to consumer reporting agencies that assemble and evaluate it. *Id.*; *see also Ramiro Antonio Malagan Melendez v. Equifax Credit Info. Servs., Transouth Fin.*, 1997 WL 392375, at *2 (D.P.R. July 3, 1997) ( "[I]t is well-settled that a company or person which merely furnishes information to a consumer reporting agency is not a 'consumer reporting agency.'").

Other courts have agreed that "obtaining and forwarding information does not make an entity a [consumer reporting agency]." *Ori*, 603 F. Supp. 2d at 1175; *see also DiGianni v. Stern's*, 26 F.3d 346, 349 (2d Cir. 1994) (noting that "[a]ssembling and evaluating ... 'implies a function which involves more than receipt and retransmission of information'"); *Zeller v. Samia*, 758 F. Supp. 775, 782 (D. Mass. 1991) ("It is well settled that a party who does no more than furnish information to a credit reporting agency is not liable under the Act."); *Walker v. Fabrizio & Brook, P.C.*, 2017 WL 5010781, at *2 (E.D. Mich. Nov. 2, 2017) (citing *D'Angelo*, 515 F. Supp. at 1253). Plaintiff's own Complaint shows that InformData merely obtained data and passed it along to Turn. Plaintiff thus does not state a claim against a consumer reporting agency as defined by the FCRA.

19

### c.     Plaintiff Alleges that InformData Acted as a Data Furnisher, Not a Consumer Reporting Agency.

Considering as a whole Plaintiff's complaint against Turn, the underlying arbitration, and the instant Complaint, it is abundantly clear that InformData is merely a data furnisher that is not subject to liability under the FCRA. As previously discussed, the Act imposes distinct obligations on entities that furnish information to consumer reporting agencies, commonly known as data furnishers. *See* 15 U.S.C. § 1681s-2. The Act's regulations define a data furnisher as "an entity that furnishes information relating to consumers to one or more consumer reporting agencies for inclusion in a consumer report." 12 C.F.R. § 1022.41(c). Courts have recognized that, in a single transaction, "a single entity cannot be both the furnisher of information to a consumer reporting agency and the consumer reporting agency receiving that same information." *Alston v. LexisNexis Risk Sols. Inc.*, 2022 WL 17735808, at *4 (D.D.C. Dec. 16, 2022); *see also Smith v. Lockhart, Morris & Montgomery, Inc.*, 2024 WL 2977391, at *4 (S.D. Ohio June 13, 2024) (same).

Plaintiff's allegations undermine the claim that InformData was "assembling or evaluating" information rather than "furnishing" information to Turn. As reflected in his prior pleading against Turn (*see supra* pp. 3-4), Plaintiff's Complaint clearly alleges that Turn, not InformData, was the relevant consumer reporting agency. For example, Plaintiff alleges that InformData "used automated systems to search and obtain [criminal] information about [him]," Am. Compl. ¶ 74, implying InformData "scraped" county-level data to access his allegedly expunged records. *Id.* ¶ 43. According to Plaintiff, after InformData collected this data, Turn—which "evaluat[es] and/or assembl[es]" such data, Harris Decl. Ex. 1 ¶ 16—"in turn reported that inaccurate information" to GoShare. Am. Compl. ¶ 3; *see also id.* ¶¶ 5–6, 77, 81, 84, 92. But as the party furnishing the "scraped" data to Turn, *id.* ¶ 43, InformData cannot be the one that "assemble[d]" or "evaluate[d]" the data ultimately provided to GoShare. 15 U.S.C. § 1681a(f).

Nor can Plaintiff take the position that InformData, rather than Turn, is the relevant consumer reporting agency subject to the FCRA's requirements. While the Complaint at times suggests that Turn merely acted as a pass-through for the criminal data furnished by InformData (*compare id.* ¶ 3, *with id.* ¶¶ 70-77)—those allegations are inconsistent with the position Plaintiff took in his complaint against Turn, and this Court need not credit them. *See Lowery v. Stovall*, 92 F.3d 219, 223 (4th Cir. 1996) ("Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation"). In the arbitration, Plaintiff averred that Turn, acting as a "consumer reporting agency" that assembles and evaluates data "prepared" the background report that Turn provided to GoShare. Harris Decl. Ex. 1 ¶¶ 16, 21, 65, 89, 92. And the arbitration award confirms that the arbitrator accepted this position. Harris Decl. Ex. 2 at 2; *see also In re Cohn-Phillips, Ltd.*, 193 B.R. 757, 765 (Bankr. E.D. Va. 1996) ("While judicial estoppel is usually found where there are prior judgments, the rules of judicial estoppel should apply to an arbitration award"); *see also Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 294 (5th Cir. 2004) (applying judicial estoppel to a position taken before an arbitration tribunal where the tribunal "relied on [party's] representations in . . . decisionmaking"). Additionally, the background report Turn prepared for Plaintiff, on its face, confirms that Turn prepared its own background report, which, in addition to the results of Turn's criminal background check, included the results of its address verification, sex offender registry check, and motor vehicle check, among other information. Harris Decl. Ex. 6. Plaintiff's allegations confirm that InformData fits the definition of a data furnisher, not a consumer reporting agency. Therefore, Plaintiff's claim under section 1681e(b) must be dismissed.

2.      **Reporting Expunged Convictions Does Not Violate the FCRA.**

Even if Plaintiff had plausibly alleged that InformData is a consumer reporting agency, his claim under 1681e(b) fails as a matter of law because he cannot demonstrate that his "consumer report contains inaccurate information." *Wadley v. Equifax Info. Servs.*, LLC, 396 F. Supp. 2d 677, 679 (E.D. Va. 2005) (citing *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001)). The Fourth Circuit recently clarified that reported information is actionably "inaccurate" only if "the inaccuracy or incompleteness is objectively and readily verifiable." *Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 252 (4th Cir. 2025) (relying on *Sessa v. Trans Union, LLC*, 74 F.4th 38, 42 (2d Cir. 2023)).[10]

Again, section 1681e(b) requires a consumer reporting agency to follow "reasonable procedures" to ensure the "accuracy of the *information* concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b) (emphasis added). And section 1681c prescribes the type of "information" a consumer reporting agency may include in a background report. *Id.* § 1681c. Convictions may be reported indefinitely. *Id.* § 1681c(a)(5).

Though the Act does not define "conviction," the prevailing view among courts (including a district court in this Circuit) is that "the word 'convictions' [in section 1681c(a)(5)] encompasses pleas of guilt," regardless of any subsequent "diversionary disposition." *Aldaco v. RentGrow, Inc.*, 921 F.3d 685, 690 (7th Cir. 2019). The Seventh Circuit's reasoning in *Aldaco* is helpful. In that case, like here, the plaintiff argued that a consumer reporting agency violated the Act by reporting her guilty plea as a conviction because an Illinois court had dismissed the conviction six months

---

[10] Although *Roberts* involved a furnisher rather than a consumer reporting agency, the court made clear that its holding extends to consumer reporting agencies. 131 F.4th at 251 n.6 (noting that its reliance on cases involving consumer reporting agencies "should not be interpreted to address any differences between furnishers' and consumer reporting agencies' obligations under the FCRA").

later under a diversionary program. 921 F.3d at 687. The court flatly rejected this argument, relying on precedent holding that "[f]ederal law controls" the meaning of the word "conviction" under the FCRA. *Id*. at 687-88, 89 (collecting cases). For example, in *Dickerson v. New Banner Institute, Inc.*, the Supreme Court held that a state's expungement of the defendant's guilty plea to a state offense did not nullify his "conviction" within the meaning of a federal firearms statute. 460 U.S. 103, 111-15 (1983). In so ruling, the court noted that expungement statutes, and the effects thereof, "vary widely from State to State," and its holding makes "for desirable national uniformity unaffected by varying state laws, procedures, and definitions of 'conviction.'" *Id*. at 112, 120-22; *see also Aldaco,* 921 F.3d 685 at 688. ("[T]he word 'conviction' in federal statutes has been defined according to state law only with explicit direction from Congress").

Recent decisions squarely addressing the issue at hand have relied on *Aldaco*. For instance, in *Bugoni v. Employment Background Investigations, Inc.*, the court rejected the plaintiff's claim that a consumer reporting agency violated the FCRA by reporting a misdemeanor offense that had later been set aside. It noted that "federal courts have long defined the term ['conviction'], in the FCRA context … to turn on a finding of guilt after a plea or verdict of guilt, regardless of any subsequent non-merits-based or rehabilitative expungement." 2022 WL 888434, at *3 (D. Md. Mar. 25, 2022), *aff'd*, 2023 WL 3721210 (4th Cir. May 30, 2023). *In Peeples v. National Data Research, Inc.,* the plaintiff argued that a consumer reporting agency violated the FCRA by refusing to remove an expunged conviction from her background report. 2024 WL 1476201, at **2-3 (N.D. Ga. Feb. 27, 2024). The court adopted the magistrate's order, holding that the "FCRA expressly permits consumer reporting agencies to report records of convictions of crimes," and thus, relying on "the definition of the term 'conviction' by federal courts," the plaintiff's background report "accurately reported [her] prior conviction." *Id*. at *5; *see also Obabueki v.*

23

*Choicepoint, Inc.*, 236 F. Supp. 2d 278, 283-84 (S.D.N.Y. 2002), *aff'd sub nom. Obabueki v. Int'l Bus. Machines Corp.*, 319 F.3d 87 (2d Cir. 2003) (quoting *United States v. Doe*, 36 F. Supp. 2d 143, 144 (S.D.N.Y. 1999) ("Requiring that credit reporting agencies not report convictions that have been set aside would … be equivalent to 'judicially mandated prevarication.'")).

Applying the reasoning of these cases, Plaintiff's claim under section 1681e(b) is also subject to dismissal; indeed, there is no dispute that the convictions included on his background report are accurate. Am. Compl. ¶¶ 105-12. Those convictions are reportable under section 1681c(a)(5) of the Act, notwithstanding Delaware's alleged expungement of the convictions. Furthermore, that the convictions were allegedly expunged cannot give rise to an actionable claim under section 1681e(b) because whether the data InformData allegedly scraped from the Internet (*see* Am. Compl. ¶¶ 43, 74) reflected criminal records that were expunged is not "objectively and readily verifiable." *Roberts*, 131 F.4th at 252 (plaintiff's "factual allegations must also show that the inaccuracy … is objectively and readily verifiable … for the plaintiff's claim to survive a Rule 12 motion"). An expungement order is "not open to public inspection," Del. Code Ann. tit. 11, § 4372(e)(1), such that it is easily verifiable, and thus it cannot give rise to liability under section 1681e(b) of the FCRA.

### 3. Plaintiff's Negligence Claim is Barred by the Economic Loss Doctrine.

Plaintiff asserts a common law negligence claim, alleging that InformData furnished inaccurate criminal data about him to Turn. *See* Am. Compl. ¶¶ 113-29. In support of this claim, he seeks three categories of damages: (1) economic harm; (2) emotional distress and mental anguish; and (3) punitive damages. *Id*. ¶¶ 128-29. But none of these forms of damages are legally recoverable in Delaware under a negligence theory. Plaintiff's negligence claim should thus be dismissed. *See, e.g.*, *Bray v. Gamestop Corp.*, 2018 WL 11226516, at *4 (D. Del. Mar. 16, 2018) (applying Delaware law and dismissing negligence claim for seeking only unavailable damages).

24

Begin with Plaintiff's request for economic damages. *See* Am. Compl. ¶ 128 (alleging "loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; damage to his reputation"). Under Delaware law, such damages— encompassing "monetary loss, . . . loss of employment, business or employment opportunities, loss of good will, and diminution in value"—are classified as "economic loss." *Riverbend Cmty., LLC v. Green Stone Eng'g, LLC*, 2012 WL 1409013, at *3 (Del. Super. Ct. Apr. 4, 2012), *aff'd*, 55 A.3d 330 (Del. 2012); *see also Poulos v. City of New Castle*, 2014 WL 7205169, at *7 (D. Del. Dec. 15, 2014) ("Harm to reputation constitutes economic loss."). The "economic loss doctrine" precludes recovery of such damages in negligence actions. *See Kuhn Const. Co. v. Ocean & Coastal Consultants, Inc.*, 844 F. Supp. 2d 519, 526 (D. Del. 2012) (granting motion to dismiss). Instead, negligence claims must allege "bodily harm or property damage," which Plaintiff neither alleges nor can allege here. *See* Am. Compl. ¶¶ 113-29.

Importantly, the economic loss doctrine applies even in the absence of a contractual relationship between the parties. *See Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1194 (Del. 1992) ("[T]he economic loss doctrine applies under Delaware law, notwithstanding the presence of privity of contract"); *see also Int'l Fid. Ins. Co. v. Mattes Elec., Inc.*, 2002 WL 1400217, at *1 (Del. Super. Ct. June 27, 2002) (noting the doctrine applies "when contract provisions limit a plaintiff's recovery, or where no contract exists at all"). Although Delaware law recognizes a negligent misrepresentation exception, it does not apply here because Plaintiff does not, and cannot, allege that InformData provided information to *him* "for use in business transactions with third parties." *Riverbend Cmty.*, 2012 WL 1409013, at *4. Accordingly, the economic loss doctrine bars Plaintiff's claim for economic damages, as courts have held in similar FCRA cases. *See, e.g., Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622, 638-39 (S.D. Ohio 2020) ("Plaintiff's

negligence claim is barred by the economic loss doctrine."); *Fryfogle v. First Nat'l Bank of Greencastle*, 2009 WL 700161, at \*\*7-8 (W.D. Va. Mar. 17, 2009) ("Despite the Plaintiff's allegations of physical and mental injury, however, his negligence claim is barred by the economic loss doctrine.").

As noted above, Plaintiff also seeks damages for emotional distress and mental anguish. *See* Am. Compl. ¶ 128 (alleging "loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment"). Delaware law is clear that, in negligence actions, recovery for mental anguish requires "present and demonstrable physical injury to the plaintiff." *Garrison v. Med. Ctr. of Del. Inc.*, 581 A.2d 288, 293 (Del. 1989); *accord Brzoska v. Olson*, 668 A.2d 1355, 1362 (Del. 1995) ("[P]laintiffs have sustained no physical injury, and, therefore, they could not recover under a negligence theory."). Because Plaintiff alleges no physical injury, damages for emotional distress and mental anguish are unavailable. *See Garrison*, 581 A.2d at 293.[11]

Finally, Plaintiff's request for punitive damages also fails. *See* Am. Compl. ¶ 129. Under Delaware law, punitive damages are unavailable absent an award of compensatory damages. *See, e.g.*, *Stephenson v. Capano Dev., Inc.*, 462 A.2d 1069, 1077 (Del. 1983) ("The award of punitive damages cannot be made unless the plaintiff also receives compensatory damages.").

---

[11] Also, a court in this Circuit has recognized that "[c]laims of emotional distress suffered as a result of the economic loss complained of do not remove the claims from the scope of the economic loss doctrine." *Fryfogle*, 2009 WL 700161, at \*7 (collecting cases). Similarly, in *Theuerkauf v. United Vaccines Div. of Harlan Sprague Dawley, Inc.*, 821 F. Supp. 1238, 1242 (W.D. Mich. 1993), the court explained: "Plaintiff cannot shield his claims from the Economic Loss Doctrine by seeking compensation for emotional distress and punitive damages . . . Allowing plaintiff to defeat the Economic Loss Doctrine by seeking compensation for emotional distress and punitive damages would also swallow the Doctrine."

In summary, Plaintiff has not pleaded any legally cognizable damages, and his negligence claim should therefore be dismissed. *Bray*, 2018 WL 11226516, at *4.

### 4.    Plaintiff's Defamation Per Se Claim Should Be Dismissed Because The Statement Was Substantially True.

Plaintiff asserts a *per se* defamation claim based on InformData's alleged publication of his expunged criminal records to Turn. Am. Compl. ¶¶ 130-42. But Plaintiff admits that he was convicted of the crimes at issue, *id.* ¶ 51, and the subsequent expungement of those convictions "does not and cannot undo historical facts or convert once-true facts into falsehoods." *Martin v. Hearst Corp.*, 777 F.3d 546, 551 (2d Cir. 2015). Plaintiff's defamation claim should be dismissed.

"Under Delaware law there is no liability for defamation when a statement is determined to be substantially true." *Riley v. Moyed*, 529 A.2d 248, 253 (Del. 1987). Courts nationwide have consistently held that publishing the fact of a conviction—even if later expunged—is substantially true. *See Martin*, 777 F.3d at 551; *see also Hardiman v. Aslam*, 125 N.E.3d 1185, 1193-94 (Ill. App. Ct. 2019) (statement that plaintiff was "convicted of misdemeanor domestic violence" was substantially true, even after expungement); *Lueckenbach v. Horizon Miss. Pubs., Inc.*, 2017 WL 473903, at *2 (N.D. Miss. Feb. 3, 2017) ("The fact that the charge was ultimately . . . expunged has no bearing on the truth of the undisputed fact, as published, that the Plaintiff 'was charged with public profanity or drunkenness[.]'"); *G.D. v. Kenny*, 15 A.3d 300, 313-16 (N.J. 2011) ("[T]he expungement statute does not transmute a once-true fact into a falsehood."); *Bahr v. Statesman Journal Co.*, 624 P.2d 664, 666-67 (Or. Ct. App. 1981) ("Because plaintiff admitted in his complaint that he had been convicted," it necessarily follows that "defendant's statement that plaintiff had been convicted was true[.]"); *Rzeznik v. Chief of Police of Southampton*, 373 N.E.2d 1128, 1133 (Mass. 1978) ("There is nothing in the statute or the legislative history to suggest that, once the fact of a conviction is sealed, it becomes nonexistent, and hence untrue for the purposes

of the common law of defamation."); *see generally* Eugene Volokh, *Libel by Omission of Exculpatory Legal Decisions*, 97 Notre Dame L. Rev. 351, 355 (2021) ("[A]n expungement . . . doesn't demonstrate innocence of the original charge.").

Plaintiff's defamation *per se* claim cannot survive this overwhelming authority. Simply alleging that his conviction is "non-existent," Am. Compl. ¶ 136, does not make it so. Delaware's expungement laws do not erase the historical fact of a conviction. *See* Del. Code Ann., tit. 11, §§ 4371-78. Expunged records are not destroyed; they are merely "removed from the court's files." *Id.* § 4732(e)(1). Moreover, if the individual is later convicted of another offense, the expunged records may be considered "during the defendant's sentencing." *Id.* § 4736(h)(1). The statute allows Plaintiff "to deny his conviction" to others, *Bahr*, 624 P.2d at 666, but it does not require private actors—such as InformData—to do the same. *See G.D.*, 15 A.3d at 298 (noting that expungement statutes do not prohibit "information about a[] . . . conviction" from being "compiled by data aggregators and disseminated to companies interested in conducting background checks"). For these reasons, Plaintiff's defamation claim should be dismissed. Plaintiff's own allegations establish that the fact he had a criminal record is substantially true. *See, e.g.*, *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850-51 (4th Cir. 2016) (noting that a claim can be dismissed "if the face of the complaint includes all necessary facts for [a] defense to prevail"); *see also, e.g.*, *Bahr*, 624 P.2d at 665 (affirming dismissal of defamation claim based on defense of truth).

### 5.    Alternatively, the FCRA Preempts Plaintiff's State-Law Claims.

Finally, Plaintiff's state-law claims should be dismissed as preempted by the Act. Section 1681t(b)(1)(F) of the Act expressly states that "[n]o requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s-2 of this title, relating to the *responsibilities of persons who furnish information to consumer reporting agencies*." 15 U.S.C. § 1681t(b)(1)(F) (emphasis added). As previously discussed,

Plaintiff does not allege that InformData prepared a background report for GoShare. *See supra* p. 5. Rather, he contends that InformData provided Turn with "details of [Plaintiff's] criminal records that have been ***expunged***," which Turn then included in the background report it prepared for GoShare. Am. Compl. ¶ 66. InformData falls within the definition of a furnisher of information in this context.

Given these facts, Plaintiff's negligence and defamation claims are preempted by section 1681t, as they attempt to impose state-law requirements. Although the Fourth Circuit has not yet addressed the precise scope of section 1681t preemption, numerous other circuits, and this Court, have persuasively concluded that section 1681t preempts state common-law claims. *See White v. Trans Union LLC*, 2025 WL 409660, at *3 (E.D. Va. Feb. 5, 2025) (Alston, J.) (collecting cases). These courts have reasoned that "[t]he phrase [n]o requirement or prohibition [under section 1681t(b)] sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 106-07 (2d Cir. 2009); *see also Hamer v. Navient Corp.*, 2019 WL 3936655, at *3 (D. Del. Aug. 20, 2019) ("[T]he Court agrees that [section] 1681t(b)(1)(F) of the FCRA preempts all state statutory and common law claims that may be raised against furnishers of information to credit reporting agencies."). Preemption is yet another basis to reject Plaintiff's state law claims.

## IV.
## CONCLUSION

For the foregoing reasons, InformData requests that the Court compel Plaintiff to arbitrate his claims and stay this action pending the outcome of any arbitration, or alternatively, dismiss Plaintiff's Complaint in its entirety and with prejudice.

Respectfully submitted,


By: */s/ Carmen Longoria-Green*

Carmen Longoria-Green
MAYER BROWN LLP
1999 K Street NW
Washington, DC 20006
Tel: (202) 263-5282
clongoriagreen@mayerbrown.com



Charles E. Harris, II
Anastasiya Lobacheva
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606
Tel: (312) 782-0600
charris@mayerbrown.com
alobacheva@mayerbrown.com

*Attorneys for Defendant InformData, LLC*

Dated: 28th day of July 2025

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served upon the following known counsel and the parties of the record this 28th day of July 2025, via the CM/ECF system:


*/s/ Carmen Longoria-Green*