IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| HARRY SMITH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:25-cv-826 (RDA/WEF) |
| ) | |
| INFORMDATA, LLC, formerly known ) | |
| as Wholesale Screening, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendant InformData, LLC's Motion to Compel Arbitration or for Dismissal. Dkt. 44 (the "Motion"). The Court has dispensed with oral argument as it would not aid in the decisional process. Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). This matter has been fully briefed and is now ripe for disposition. Considering the Motion together with Defendant's Memorandum in Support (Dkt. 45); the First Amended Complaint (Dkt. 43) ("FAC"); Plaintiff Harry Smith's Opposition (Dkt. 49); and Defendant's Reply (Dkt. 50), the Court GRANTS-IN-PART and DENIES-IN-PART Defendant's Motion for the following reasons.

### I. BACKGROUND

#### A. Factual Background

Plaintiff Harry Smith filed suit for alleged violations of the Fair Credit Reporting Act ("FCRA") arising out of an "employment purposed consumer report published by Defendant to non-party Turn Technologies Inc. . . . who then resold the same to Plaintiff's potential employer, inclusive of criminal records that had been ***pardoned and expunged*** years earlier." Dkt. 43 at 1 (emphasis in original). According to the FAC, Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis and then sells consumer reports

generated from its database to entities who ultimately resell those reports to employers making decisions regarding whether to offer employment to certain individuals. *Id.* at 2.

Plaintiff alleges that 95 percent of employers surveyed in 2018 conducted one or more types of background screenings on potential employees. *Id.* ¶ 40. Plaintiff asserts that background checks are "generally created by running automated searches through giant databases of aggregated criminal record data" with little to no manual, in-person review. *Id.* ¶ 42. According to Plaintiff, Defendant's website asserts that it pioneered systems that scrape county-level data for criminal information and accordingly replaced human researchers with bots. *Id.* ¶ 43.

In February of 2020, Plaintiff appeared before the Board of Pardons (for an unidentified jurisdiction, but presumably Delaware) and sought a pardon for convictions that were more than a decade old. *Id.* ¶ 51. Thereafter, the Board of Pardons recommended that Plaintiff be pardoned. *Id.* ¶ 52. On May 26, 2020, then-Governor of Delaware John Carney granted Plaintiff a pardon for all of his convictions. *Id.* ¶ 53.

In July 2020, Plaintiff applied for expungement of his convictions. *Id.* ¶ 55. On March 3, 2021, Plaintiff's petition for expungement was granted pursuant to 11 Del. Code § 4372(e)(1), which provides that, within 60 days of expungement, all criminal records must "be removed from the Court's files." *Id.* ¶ 55. The expungement order further stated that Plaintiff need not disclose that he was arrested, charged, or convicted of the expunged convictions, for any reason except as provided for in 11 Del. Code § 4376(a). *Id.* ¶ 56. That statute provides that it is "unlawful for any person having or acquiring access to an expunged court or law-enforcement agency record to open or review it or to disclose to another person any information from it without an order from the court which ordered the record expungement." *Id.*

On March 13, 2023, Plaintiff applied for full-time employment as a Delivery Professional with GoShare Inc. *Id.* ¶ 57. Plaintiff completed an interview and was then offered a job. *Id.* ¶¶ 58-59. Plaintiff's employment with GoShare was conditioned on the results of a background check. *Id.* ¶ 60. On March 24, 2023, Plaintiff authorized a background check in relation to the GoShare job. *Id.* ¶ 61.

GoShare contracted with Turn Technologies to conduct background checks for prospective employees. *Id.* ¶ 63. On March 24, 2023, GoShare ordered a criminal background check on Plaintiff from non-party Turn Technologies. *Id.* ¶ 64. This criminal background check did not recognize Plaintiff's expunged records.

On June 13, 2023, Plaintiff sued Turn Technologies for violations of FCRA. *Id.* ¶ 65; *Smith v. Turn Techs., Inc.*, No. 1:23-cv-00647 (D. Del.) (the "*Turn* Litigation"). Thereafter, Plaintiff pursued his claims against Turn Technologies in arbitration before the American Arbitration Association. *Id.* ¶ 66. That arbitration was initiated on November 3, 2023. *Id.* ¶ 67. During that arbitration, Plaintiff learned, for the first time, of Defendant's involvement. *Id.* ¶ 68. Specifically, on September 23, 2024, Plaintiff learned that Defendant provided information regarding Plaintiff to Turn Technologies. *Id.* ¶ 69.

Defendant notes that, in the *Turn* Litigation, Plaintiff similarly alleged that Turn Technologies violated Section 1681e(b) of FCRA. Dkt. 45 at 11.[12] Defendant further notes, as Plaintiff alleges, Plaintiff's claims against Turn Technologies were subject to an arbitration

---

[1] This Court may "take judicial notice of docket entries, pleadings, and papers in other cases." *Mills v. City of Norfolk, Virginia*, 2020 WL 7630647, at *4 (E.D. Va. Dec. 22, 2020) (quoting *Brown v. Ocwen Loan Servicing*, LLC, 2015 WL 5008763, at *1 n.3 (D. Md. Aug. 20, 2015)).

[2] All references to page numbers refer to the CM/ECF assigned page numbers unless otherwise indicated.

3

agreement contained in the Terms of Use (the "Terms") which states: "You and Turn agree to arbitrate all dispute and claims between us that arise out of, relate to, or associated with [Turn's] Services." *Id.* at 12; Dkt. 45-1 at 1 ¶ 4, 28-63. Defendant further asserts that Plaintiff agreed to the Terms on March 24, 2023. Dkt. 45 at 12.

Plaintiff asserts that Turn Technologies contracted with Defendant to conduct background checks, including criminal background checks. *Id.* ¶ 70. On March 24, 2023, Turn Technologies ordered a criminal background check on Plaintiff from Defendant. *Id.* ¶ 72. On March 28, 2023, Defendant completed its consumer report about Plaintiff and sold the same to Turn Technologies. *Id.* ¶ 73. Plaintiff alleges, upon information and belief, that Defendant used automated systems to search and obtain information about Plaintiff. *Id.* ¶ 74.

Plaintiff asserts that, within its consumer report on Plaintiff, Defendant sold and reported pertinent details of criminal records that have been expunged and which, Plaintiff argues, should have been excluded from the background check. *Id.* ¶ 76. Plaintiff asserts that Defendant's inclusion of such information "defeat[s] the entire purpose in seeking and securing an *expungement* order in the first place." *Id.* (emphasis in original). Plaintiff alleges, upon information and belief, that "the information Defendant relied on in preparing and selling its consumer report about Plaintiff was incomplete and outdated and likely obtained prior to Plaintiff's expungement." *Id.* ¶ 78. Plaintiff asserts that "[a] cursory review of the widely available public court records confirms that there were no criminal records reported about Plaintiff." *Id.* ¶ 79.

On March 29, 2023, Turn Technologies resold Defendant's consumer report about Plaintiff to Plaintiff's prospective employer, GoShare. *Id.* ¶ 85. That same day, Plaintiff was notified by GoShare that his employment application was denied as a direct result of the expunged criminal records published by Defendant. *Id.* ¶ 86. In the same notification, GoShare informed Plaintiff

that he could not reply to the communication, that new applications would not be accepted, and that new background checks would not be performed. *Id.* ¶ 87.

Shortly thereafter, Plaintiff obtained a copy of the background check resold by Turn Technologies. *Id.* ¶ 89. He was shocked to see that his expunged criminal convictions were contained in the report. *Id.* Plaintiff contacted GoShare to inform it that the criminal records should not have been reported. *Id.* ¶ 91.

Plaintiff asserts the following claims for relief: (i) failure to follow reasonable procedures to assure maximum possible accuracy, in violation of 15 U.S.C. § 1681e(b); (ii) negligence; and (iii) defamation per se.

### B. Procedural Background

On May 13, 2025, Plaintiff filed his Complaint. Dkt. 1. Initially, on June 17, 2025, Defendant first filed its Motion to Compel Arbitration or for Dismissal. Dkt. 13. On July 1, 2025, Plaintiff filed an Amended Complaint. Dkt. 23. Thereafter, Defendant filed another Motion to Compel Arbitration or for Dismissal. Dkt. 34. Plaintiff again amended his complaint on July 22, 2025. Dkt. 43.

On July 28, 2025, Defendant filed the pending Motion. Dkt. 44. On August 11, 2025, Plaintiff filed his Opposition. Dkt. 49. On August 18, 2025, Defendant filed its Reply. Dkt. 50.

## II.   STANDARD OF REVIEW

### A.   Arbitration Agreements

The Federal Arbitration Act ("FAA") stipulates that a written arbitration agreement "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "The effect of [this] section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the

Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (alterations added). Likewise, the FAA was passed "to reverse the longstanding judicial hostility to arbitration agreements . . . and to place arbitration agreements upon the same footing as other contracts." *Rader v. Nw. Fed. Credit Union*, 2024 WL 388097, at *4 (E.D. Va. Feb. 1, 2024) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 89 (2000)).

B.  Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the sufficiency of a complaint," but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, in reviewing a motion to dismiss, the Court must "accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff." *Coleman v. Maryland Ct. of App.*, 626 F.3d 187, 189 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of App. of Md.*, 566 U.S. 30 (2012). The Court must also "draw all reasonable inferences in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (internal quotation marks and citation omitted).

To avoid Rule 12(b)(6) dismissal, a complaint must contain sufficient factual allegations "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To qualify as plausible, a claim needs sufficient factual content to support a reasonable inference of the defendant's liability for the alleged misconduct. *See id.*; *Twombly*, 550 U.S. at 556. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The factual allegations must be sufficient to "raise a right to relief above the speculative level" so

as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. Additionally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).

III.   ANALYSIS

Defendant first argues that Plaintiff must arbitrate his claims pursuant to the Terms in the agreement between Turn Technologies and Plaintiff. In the alternative, Defendant seeks dismissal of each count of the FAC. The Court will address each argument in turn.

A.   Whether This Case Should be Arbitrated

Defendant argues that whether this case should be subject to arbitration is a matter of Delaware law. Dkt. 45 at 16. Plaintiff does not contest the application of Delaware law but merely asserts that it does not matter whether Delaware or Virginia law applies here. Dkt. 49 at 9. Accordingly, the Court assumes without deciding that Delaware law applies.

Defendant concedes that "Delaware courts interpret contract terms according to their plain, ordinary meaning" and that a court "interpreting any contractual provision . . . must give effect to all terms of the instrument." Dkt. 45 at 21 (citing *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012); *Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998)). Equally important, Delaware courts recognize "the accepted principle that there is no obligation to arbitrate except as created by contract." *Lowe Bros. v. Church Home Found., Inc.*, 1980 WL 6372, at *1 (Del. Ch. Apr. 16, 1980). Here, the applicable language in the Terms that Defendant seeks to enforce is: "You and Turn agree to arbitrate all dispute and claims between us that arise

7

out of, relate to, or associated with [Turn's] Services." Dkt. 45-1 at 1 ¶ 4, 28-63. The Terms further provide that references to Turn, you, or us "include our respective predecessors in interest, successors, and assigns, as well as our respective past, present, and future subsidiaries, affiliates, agents, employees, and all authorized or unauthorized users or beneficiaries of Services or Sites under this or prior agreements between us." *Id.*

Defendant, perhaps recognizing that the Terms limit the arbitration agreement to disputes "between us," seeks to shoehorn itself into the definition of Turn, by designating itself as a beneficiary of Turn. In so arguing, Defendant argues that the dictionary definition of a beneficiary is a person or thing that "receives help or an advantage from something" and asserts that it received a "financial benefit from Turn." Dkt. 45 at 22. But, under the Terms, it is not enough to simply benefit from Turn in general. The Terms provide that entities are only covered as "Turn" under the arbitration provision if they are "users or beneficiaries *of Services or Sites*." Dkt. 45-1 at 45 (emphasis added). In expanding the Terms to include any financial benefit, Defendant reads out a material limitation on the arbitration agreement. *Alta Berkely VI C.V. v. Omneon, Inc.*, 2011 WL 2923884, at *5 (Del. Super. Ct. July 21, 2011), *aff'd sub nom. Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381 (Del. 2012) (holding that "the Court has honored the basic tenet of contract construction that requires courts to give meaning to all contractual terms and discourages courts from endorsing a construction that would render any contractual term superfluous"). There are no allegations that Defendant was the user or beneficiary of Turn Technologies' *Services* or *Sites*. Accordingly, Defendant is not a beneficiary of the arbitration agreement under the Terms.

The Court's reading of the plain language of the arbitration agreement is also consistent with Delaware law. In *Falcon Tankers, Inc. v. Litton Sys., Inc.*, 300 A.2d 231 (Del. Super. Ct. 1972), a third party designed and manufactured pumps which were sold to the defendant and

installed in a boat, owned by plaintiff, that subsequently experienced difficulties. *Id.* at 233-34. The defendant subsequently sued the third-party and the third party attempted to take advantage of an arbitration clause as between plaintiff and defendant by asserting that it was a beneficiary. *Id.* at 236. The Delaware Court held that, where the arbitration agreement was expressly between "any dispute, difference or disagreement between Buyer and Seller arising out of the performance of This [sic] Contract," the clause was not broad enough to reach the unrelated third-party. *Id.* at 237. So too here, the arbitration clause evinces no intent to include claims by the unrelated seller of information to Turn Technologies where the clause is limited to disputes between "us."

Seeking to avoid this conclusion, Defendant primarily argues that it is entitled to arbitrate under the equitable estoppel doctrine. As defined by Defendant, the Delaware equitable estoppel doctrine provides that "non-signatories are permitted to compel signatories to arbitrate disputes under [the] theory of equitable estoppel" where there are "allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one . . . of the signatories to the contract." Dkt. 45 at 18-19 (citing *Douzinas v. Am. Bureau of Shipping, Inc.*, 888 A.2d 1146, 1153 (Del. Ch. 2006); *Wilcox & Fetzer, Ltd. v. Corbett & Wilcox*, 2006 WL 2473665, at *5 (Del. Ch. Aug. 22, 2006)). But here, there are no allegations of interdependent and concerted misconduct. *See* Dkt. 43. Rather, Plaintiff alleges *only* that Defendant, acting alone, caused Plaintiff's damages. *Id.* And, as Defendant seems to agree, at this point, Plaintiff has no claims against Turn Technologies. *See* Dkt. 45-1 ¶ 3 (referring to arbitrator's dismissal of claims against Turn Technologies); *see also Turn* Litigation, Dkt. 42, dated April 21, 2025 (D. Del.) (Notice of Voluntary Dismissal). Indeed, Plaintiff specifically alleges that, at the time he filed his claim against Turn Technologies, Plaintiff did not know of the involvement of Defendant; therefore, Plaintiff's claims against Turn Technologies similarly do not allege interdependent and concerted

9

misconduct. *Id.* ¶ 69. Although Defendant asserts that Plaintiff "jointly accuses Turn and InformData of failing to provide GoShare with his criminal history," Dkt. 45 at 20, Defendant points to no allegations in the FAC where Plaintiff makes such allegations. Because Defendant cannot base its equitable estoppel theory on claims that Plaintiff has not made in this litigation, this argument fails to persuade.

Defendant argues that courts routinely apply the equitable estoppel doctrine in similar situations. Defendant primarily relies on *Noye v. Johnson & Johnson Services, Inc.*, 765 F. App'x 742 (3d Cir. 2019), in which the Third Circuit reversed a district court's order denying a motion to compel arbitration. But the *Noye* decision is not binding on this Court and distinguishable. To begin with, in *Noye*, the Third Circuit applied Pennsylvania and Michigan law – not Delaware law. *Id.* at 747. More importantly, the defendants in *Noye* were sued together, in one action, and they were "collectively accus[ed] . . . of failing to provide Noye with proper background check information." *Id.* at 748. There is no similar allegation of collective action here. Moreover, the Third Circuit left "to the District Court to decide whether Noye's FCRA claim against J&J is a dispute that is arbitrable under the Arbitration Agreement." *Id.* Thus, the Third Circuit did not provide the relief that Defendant seeks here and compel arbitration. Specifically, the Third Circuit noted that "the Arbitration Agreement speaks of who is bound to arbitrate" and, here, this Court has already determined that the arbitration agreement does not include disputes that are not "between us," meaning Plaintiff and Turn Technologies. *Id.* The other cases cited by Defendant similarly speak to a level of "coordinated behavior" that is not alleged here. Dkt. 45 at 19 (citing cases). Accordingly, the Court does not find that the doctrine of equitable estoppel permits Defendant to enforce the arbitration clause – especially given that the arbitration clause specifies

10

that it relates only to disputes "between us" referring to Plaintiff and Turn Technologies.³ Accordingly, to the extent the Motion seeks to compel arbitration, the Motion will be denied.

Further supporting the conclusion reached here are the analyses of this very arbitration provision by another federal court and analysis of equitable estoppel by the Fourth Circuit. As Plaintiff notes, a district judge in the Middle District of Florida, held that a company in the same position as Defendant was "not an anticipated user or beneficiary of a contract for a background report" and noted that such company "benefitted from its own, separate arrangement with Turn to receive payment." *Santiago v. Neno Research, Inc.*, 2024 WL 4625783, at *7 (M.D. Fla. Oct. 30, 2024). Similarly, the *Santiago* Court, like the Court here, found that it "is inequitable to allow [Defendant to compel arbitration] when the clause limits its scope to just the parties." *Id.* at *4. Indeed, the *Santiago* Court deemed such arguments "nonsensical." *Id.* at *7. Moreover, in *Brantley v. Republic Mortgage Insurance Co.*, 424 F.3d 392 (4th Cir. 2005), the Fourth Circuit held, under South Carolina law (which applies a similar principle of equitable estoppel based on allegations "interdependent and concerted misconduct"), that equitable estoppel did not permit enforcement of an arbitration clause by a non-signatory where the plaintiffs claims did not implicate the signatory in any wrongdoing. *Id.* at 396.

In short, there is no basis to permit Defendant, a nonsignatory to the agreement, who is not a third-party beneficiary of the arbitration clause, to attempt to enforce it, where the allegations in

---

³ Defendant professes a deep level of concern that Turn Technologies will be drawn into "costly third-party discovery" that will essentially deprive of it of the benefit of its bargain with respect to arbitration. Dkt. 45 at 21. It is unclear how this would occur when, based on the allegations of the FAC, Turn Technologies merely acted as a pass through after purchasing a report generated by Defendant. In the absence of allegations of coordination or concerted activity, the Court does not find this to be persuasive.

the FAC only allege misconduct by Defendant – and no other entity. Accordingly, the Motion will be denied to the extent that it seeks to compel arbitration.

B. Whether This Case Should be Dismissed

As an alternative disposition to arbitration, Defendant seeks to dismiss each of the claims against it. Defendant argues that Plaintiff has failed to allege that Defendant is a consumer reporting agency ("CRA") for purposes of FCRA and that FCRA does not impose obligations on it. Separately, Defendant argues that reporting expunged convictions does not violate FCRA. Defendant also argues that Plaintiff's negligence claim is barred by the economic loss doctrine and that the defamation claim fails because its statements were substantially true. The Court will address each claim in turn.

i. FCRA

To prevail on a claim for violation of Section 1681e(b), a plaintiff must prove that: (1) his consumer report contains inaccurate information; (2) the CRA did not follow reasonable procedures to assure maximum possible accuracy of that consumer report; and (3) damages. *See Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001). District judges within this District recognize that, "[b]y definition, a consumer report is provided by a consumer reporting agency." *Arnold v. Cap. One Servs., Inc.*, 2011 WL 864332, at *4 (E.D. Va. Mar. 10, 2011) (citing 15 U.S.C. § 1681a(d)(1)). A consumer reporting agency as "any person which, for monetary fees, dues . . . regularly engages . . . in the practice of assembling or evaluating consumer credit information or other information." 15 U.S.C. § 1681a(f).

Although Defendant raises a number of arguments regarding the plausibility of Plaintiff's FCRA claim, the one that bears consideration here is the argument that Defendant did not report inaccurate information. Importantly, last year, the Fourth Circuit expounded on the meaning of

12

"inaccuracy" in the context of FCRA as a matter of first impression. *See Roberts v. Carter-Young, Inc.*, 131 F.4th 241, 250-52 (4th Cir. 2025). In *Roberts*, the Fourth Circuit recognized that, "[w]hile defining 'accuracy' as 'not deviating from truth or accuracy' is a bit circular, these definitions reference to 'truth' suggest accuracy involves an objective inquiry." *Id.* at 251. The Fourth Circuit further referred to information as inaccurate only where it is "objectively and readily verifiable" as mistake- or error-free. *Id.* at 252. Thus, on a motion to dismiss, a plaintiff must allege factual allegations that "the inaccuracy or incompleteness is objectively and readily verifiable." *Id.* Although the *Roberts* decision addressed the use of the term "inaccurate" within a different provision of FCRA, 15 U.S.C. § 1681s-2(a), the Supreme Court has repeatedly emphasized that "identical words and phrases within the same statute should normally be given the same meaning," *Monzalvo v. Bondi*, 601 U.S. 712, 726 (2025) (citations omitted).[4]

FCRA also contains specific provisions referring to convictions. 15 U.S.C. § 1681c(a)(5) (referring to "records of convictions of crimes"). Pursuant to that provision, "convictions may be reported indefinitely." *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1185 (9th Cir. 2019); *Hope v. Dep't of Health & Human Servs.*, 2020 WL 2527032, at *5 (W.D.N.C. May 18, 2020) ("[I]nformation about Plaintiff's conviction is not subject to the seven-year limit."). Federal courts recognize that, regardless of any "diversionary disposition" or "unwinding," a finding of guilty still constitutes a conviction for purposes of FCRA and is reportable. *See, e.g., Rhodes v. First Advantage Background Servs. Corp.*, 2024 WL 4615775, at *6 (11th Cir. Oct. 30, 2024) (finding "Record 1 is a 'conviction' that is not excluded under § 1681c," even where there was a

---

[4] Moreover, in reaching its determination in *Roberts* regarding "furnishers," the Fourth Circuit relied on caselaw regarding "consumer reporting agencies" (as at issue here). 131 F.4th at 251 n.6 ("We adopt their logic here to the extent that we hold that furnishers, like consumer reporting agencies, are not required to function like full tribunals.").

diversionary disposition); *Aldaco v. RentGrow, Inc.*, 921 F.3d 685 (7th Cir. 2019) (holding that federal law, not state law, determines the existence of a conviction for purposes of FCRA reporting requirements, and permitting reporting of a guilty plea despite dismissal of the charges by state court after a deferral period); *Bugoni v. Emp. Background Investigations, Inc.*, 2022 WL 888434, at *3 (D. Md. Mar. 25, 2022) ("Plaintiff's 'set aside' conviction still constituted a conviction subject to reporting under FCRA."), *aff'd*, 2023 WL 3721210 (4th Cir. May 30, 2023);[5] *cf. Petros v. Campbell*, 980 F.2d 245, 249-51 (4th Cir. 1992) (holding that a deferred sentence of probation still constitutes a "prior conviction" for purposes of federal sentencing enhancements, although it was not a conviction under Virginia law). Indeed, the Supreme Court has held that, where a statute speaks of a "conviction" without a "modifier" or anything to suggest a "restriction on the scope of the term 'convicted,'" an "expunction" of that conviction did not change the fact of conviction. *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 111-16 (1983), *superseded by statute as stated in Logan v. United States*, 552 U.S. 23 (2007).

Thus, applying the principles announced in these "conviction" cases, Plaintiff's expunged convictions still constitute convictions. *See Bugoni*, 2022 WL 888434, at *3 ("Plaintiff's 'set aside' conviction still constituted a conviction subject to reporting under FCRA."). Although not addressed specifically by the caselaw, the Court further notes that the precise language used by Section 1681c(a)(5) is not just "convictions" but "*records of* convictions of crimes." 15 U.S.C. § 1681c(a)(5) (emphasis added). Interpreting the plain language of this provision, regardless of

---

[5] *See also Peeples v. Nat'l Data Research, Inc.*, 2024 WL 1476201 (adopting magistrate recommendation that "the definition of the term 'conviction' by federal courts" means "that the Report accurately reported Plaintiff's prior [expunged] conviction"), *vacated on other grounds*, 2025 WL 268441 (11th Cir. Sept. 19, 2025); *Obabueki v. Choicepoint, Inc.*, 236 F. Supp. 2d 278, 283-84 (S.D.N.Y. 2002), *aff'd sub nom.* 319 F.3d 87 (2d Cir. 2003) ("Requiring that credit reporting agencies not report convictions that have been set aside would . . . be equivalent to 'judicially mandated prevarication.'").

14

whether an expunged offense still constitutes a "conviction," records regarding that expunged conviction would still constitute "*records* of convictions of crimes." Furthermore, applying the Fourth Circuit's explanation of the meaning of "inaccurate" for purposes of FCRA, failing to report the later expungement is not inaccurate, because, as Plaintiff himself pleads, there are no public records of the expungement. *See* Dkt. 43 ¶ 55 (citing 11 Del. Code § 4372(e)(1)) (providing for the removal of the criminal records by the court and permitting the court to retain only "a nonpublic record of expungement"). Thus, under *Roberts*, the alleged inaccuracy – or really incompleteness as argued by Plaintiff – could not be verified by Defendant because there was no record of expungement. *Roberts*, 131 F.4th at 252.

Plaintiff argues that Defendant was required to "indicate that the criminal records were expunged and pardoned," Dkt. 49 at 26, but the FAC alleges that Defendant did not have access to the information necessary to make such a determination (Dkt. 43 ¶ 55), and the Fourth Circuit has held that companies, like Defendant, are not "tribunals" and are not required to "make the kind of determinations about disputes that courts make," *Roberts*, 131 F.4th at 251 & n.6. Essentially, Plaintiff argues that Defendant had stale information and should have known that it was stale but also acknowledges that Defendant lacked access to the information to make the record more complete. Thus, this Court joins the *Bugoni* decision from this Circuit and finds that reporting the expunged convictions was not inaccurate.[6]

---

[6] To the extent that Plaintiff argues that Defendant's report was misleading because it "report[ed] Plaintiff's records as *current* public record information," Dkt. 49 at 28, the FAC makes no such allegation regarding Defendant's representations about the currentness of the information in the report, Dkt. 43. And, it is axiomatic that a Plaintiff may not amend his complaint in opposition to a motion to dismiss. *Sansone v. U.S. Patent & Trademark Off.*, 2025 WL 696527, at *4 (E.D. Va. Mar. 4, 2025).

15

Seeking to avoid this conclusion, Plaintiff cites a number of cases (but does not attempt to discuss or distinguish *Roberts* or *Bugoni*). Dkt. 49 at 26. The cases cited by Plaintiff are inapposite, not binding, and fail to persuade. As the Fourth Circuit recognized in *Roberts*, its prior decision in *Saunders v. Branch Banking and Trust Company of Virginia*, 526 F.3d 142 (4th Cir. 2008), does not "provide the full contours of what completeness and accuracy mean." 131 F.4th at 250 (citing *Saunders*, 526 F.3d at 150). Other cases cited by Plaintiff relate to whether there is Article III standing, rather than whether there is an actionable inaccuracy. *See Clark v. Trans Union, LLC*, 2016 WL 7197391, at *9-11 (E.D. Va. Dec. 9, 2016) (finding that plaintiff alleged an injury in fact); *Stokes v. Realpage, Inc.*, 2016 WL 6095810, at *7 (E.D. Pa. Oct. 19, 2016) (finding that plaintiffs have standing to pursue their claims). As to *Doe v. Trinity Logistics, Inc.*, 2018 WL 1610514 (D. Del. Apr. 3, 2018), Plaintiff cites from the "Background" section of the opinion, which recites plaintiff's allegations, rather than any determination by the court that information was inaccurate under FCRA. *Id.* at *4 (Background); Dkt. 49 at 47 (quoting from the Background section). The substance of the *decision* in the *Doe* case was the denial of a motion to strike class claims and the denial of a motion to dismiss a claim under 15 U.S.C. § 1681b(f), neither of which is at issue here. *Doe*, 2018 WL 1610514, at *13. Thus, Plaintiff's arguments in this regard are not persuasive.

In short, because Plaintiff has not plausibly alleged that Defendant reported inaccurate information under FCRA, as construed by the Fourth Circuit and other district judges in this Circuit, the Motion will be granted.

ii.   Negligence

"The tort of negligence contains the elements of: 1) duty, 2) breach, 3) causation, and 4) damages." *Hall v. Dorsey*, 1998 WL 960774, at *2 (Del. Super. Ct. Nov. 5, 1998). Defendant

argues that, under Delaware law, "[t]he economic loss doctrine precludes negligence claims for losses that are purely monetary or economic, that is divorced from injury to person or property." *Bray v. Gamestop Corp.*, 2018 WL 11226516, at *4 (D. Del. Mar. 16, 2018). Here, Plaintiff alleges that he has suffered economic harm, psychological harm, and reputational harm, and he seeks punitive damages. Dkt. 43 ¶¶ 128-129. Defendant cites a number of cases applying the economic loss doctrine to dismiss negligence cases where the only damages alleged are economic. *See* Dkt. 45 at 33 (citing cases). Similarly, other federal courts – including district courts within this Circuit – have held that the economic loss doctrine bars negligence claims for economic harms asserted in conjunction with FCRA claims. *See, e.g.*, *Fryfogle v. First Nat'l Bank of Greencastle*, 2009 WL 700161, at *7 (W.D. Va. Mar. 17, 2009) (finding, under Pennsylvania law, that the economic loss doctrine required dismissal of negligence claim). Thus, the Court finds that Delaware's economic loss doctrine precludes Plaintiff's negligence claim for purely economic damages.

In Opposition, Plaintiff relies upon a single, unpublished case from Delaware Superior Court. Dkt. 49 at 27 (citing *Doe v. Bayhealth Med. Ctr., Inc.*, 2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025)). The *Bayhealth* case was a medical data breach case and the court there placed heavy emphasis on the "loss of privacy harms" in such cases. *Id.* at *8. In so doing, the court essentially created an exception to Delaware's long-established economic loss doctrine. But, even assuming that Delaware's highest court would approve of such an exception, the factual basis for that exception is not applicable here. This is not a data breach case with special considerations of privacy. Indeed, Plaintiff makes no attempt at asserting that he has any such special privacy interest in an expunged criminal conviction and a review of the cases cited by Defendant establishes that "an offender has no protected privacy interest in expunged criminal records." *G.D. v. Kenny*, 15 A.3d 300, 310 (N.J. 2011) (collecting cases). As the Eighth Circuit has recognized,

17

this is so because expungement cannot "permanently erase from the public record those affairs that take place in open court." *Eagle v. Morgan*, 88 F.3d 620, 625-26 (8th Cir. 1996). And, as the Third Circuit has explained, "because references to a defendant's criminal conduct may persist in public news sources after expungement, the information expunged is never truly 'private.'" *Nunez v. Pachman*, 578 F.3d 228, 229 (3d Cir. 2009). Accordingly, Plaintiff's argument in this regard does not save his negligence claim, and it will be dismissed pursuant to the economic loss doctrine.[7]

### iii. Defamation

The elements of a defamation claim in Delaware are: "(1) a false and defamatory communication concerning the plaintiff, (2) publication of the communication to third parties, (3) understanding of the defamatory nature of the communication by the third party, (4) fault on the part of the publisher, and (5) injury to the plaintiff." *Bickling v. Kent Gen. Hosp., Inc.*, 872 F. Supp. 1299, 1307 (D. Del. 1994); *see also Delaware Express Shuttle, Inc., v. Older*, 2002 WL 31458243, at *3 (Del. Ch. 2000). Additionally, "[u]nder Delaware law there is no liability for defamation when a statement is determined to be true." *Holmes v. The News Journal Co.*, 2015 WL 1893150, at *3 (Del. Super. Apr. 20, 2015) (citing *Riley v. Moyed*, 529 A.2d 248, 253 (Del.

---

[7] To the extent that Plaintiff argues that his allegation of "loss of sleep" is sufficient to allege a non-economic harm, courts applying the economic loss doctrine have rejected his argument. *See, e.g., Widjaja v. JPMorgan Chase Bank, N.A.*, 2020 WL 2949832, at *8 (C.D. Cal. Mar. 31, 2020) (dismissing, under California's economic loss rule, negligence claim premised on similar allegations of anxiety and lack of sleep); *Saleh v. Merch.*, 2018 WL 287748, at *9 (N.D. Ill. Jan. 4, 2018) (dismissing, under Illinois's economic loss rule, negligence claims premised on similar allegations of anguish and lack of sleep).

1987)). Here, Plaintiff's own allegations undermine his defamation claim and, thus, his claim will be dismissed.

Plaintiff has alleged that he had criminal convictions in Delaware. Dkt. 43 ¶ 51. Thus, any report by Defendant regarding those convictions was true, and Plaintiff does not allege otherwise. Plaintiff argues that Defendant "purported to report Plaintiff's expunged records as current public record information in connection with Plaintiff's employment background check." Dkt. 45 at 28. But that is not what Plaintiff has alleged. Plaintiff alleged that Defendant "sold and reported pertinent details of the criminal records that have been ***expunged***." Dkt. 43 ¶ 76 (emphasis in original). Moreover, Plaintiff cites no authority for the proposition that accurately reporting on a criminal conviction that was expunged is defamatory. This is likely for good reason, as the Second Circuit has recognized, expungement "creates legal fictions, but it does not and cannot undo historical facts or convert once-true facts into falsehoods." *Martin v. Hearst Corp.*, 777 F.3d 546, 551 (2d Cir. 2015); *see also Lueckenbach v. Horizon Mississippi Publications, Inc.*, 2017 WL 473903, at *2 (N.D. Miss. Feb. 3, 2017) ("The fact that the charge was ultimately dropped and expunged has no bearing on the truth of the undisputed fact . . . ."); *G.D. v. Kenny*, 15 A.3d 300, 313-16 (N.J. 2011) ("[T]he expungement statute does not transmute a once-true fact into a falsehood."); *Bahr v. Statesman Journal Co.*, 624 P.2d 664, 666-67 (Or. Ct. App. 1981) ("Because plaintiff admitted in his complaint that he had been convicted," it necessarily follows that "defendant's statement that plaintiff had been convicted was true[.]"). Here, Plaintiff's own allegations establish that the fact he had a criminal record is substantially true. Because the truth of Defendant's statements is clear from the FAC, dismissal of the defamation claim is appropriate. *See, e.g.*, *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 850-51 (4th Cir. 2016) (noting that a

claim can be dismissed "if the face of the complaint includes all necessary facts for [a] defense to prevail").

## IV. CONCLUSION

In short, Plaintiff has failed to allege facts to establish the inaccuracy of Defendant's reporting of Plaintiff's convictions under either FCRA or Delaware defamation law. Moreover, Plaintiff has failed to allege any non-economic harms such that he can state a negligence claim under Delaware's economic loss doctrine. Thus, Plaintiff has failed to plausibly state any claim.

Accordingly, it is hereby ORDERED that the Motion (Dkt. 44) is GRANTED-IN-PART and DENIED-IN-PART. The Motion is GRANTED as to the motion to dismiss for failure to state a claim. The Motion is DENIED as to the motion to compel arbitration; and it is

FURTHER ORDERED that the action is DISMISSED and the Clerk of the Court is DIRECTED to place the matter among the ended causes.[8]

The Clerk is directed to forward copies of this Memorandum Opinion and Order to all counsel of record.

IT IS SO ORDERED.

Alexandria, Virginia
March 11, 2026

/s/
Rossie D. Alston, Jr.
United States District Judge

---

[8] Given this Court's rulings here, it appears futile to permit amendment of Plaintiff's claims. Even if Plaintiff could conceivably amend his negligence claim to avoid the economic loss doctrine, the Court would decline to exercise supplemental jurisdiction over such a claim. *See* 28 U.S.C. § 1367(c); *see also Alston v. Anderson*, 2023 WL 416197, at *7 (E.D. Va. Jan. 25, 2023) (recognizing that, when claims are dismissed in the early stages of the litigation, the "values of judicial economy, convenience, fairness, and comity" weigh in favor of dismissing the remaining state law claims).